**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SiteLock LLC, | No. CV-19-02746-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| GoDaddy.com LLC, | |
| Defendant. | |

## INTRODUCTION

In 2013, Plaintiff SiteLock LLC ("SiteLock") and Defendant GoDaddy.com LLC ("GoDaddy") entered into a contract (the "Reseller Agreement") under which GoDaddy agreed to market and sell SiteLock's website security services to GoDaddy's customers. In this action, SiteLock accuses GoDaddy of various contractual breaches, as well as Lanham Act and state-law violations, and seeks over $20 million in damages.

The discovery process has not, to put it mildly, gone smoothly. Time and again, the parties have resorted to bickering and fighting in lieu of seeking cooperative, productive solutions, then deluged the Court with voluminous filings related to discovery disputes. Things got so bad that the parties began using a court reporter to transcribe their private meet-and-confer sessions. And, remarkably, even the use of a court reporter wasn't enough to prevent the parties from arguing over what was said during these sessions—one side has now accused the other of improperly conspiring with the court reporter to alter the transcripts of a meet-and-confer session.

Now pending before the Court are five motions that are related, in one way or another, to the parties' discovery-related intransigence: (1) GoDaddy's motion for leave to file an amended answer and counterclaims (Docs. 93, 94); (2) SiteLock's motion to compel (Doc. 121); (3) GoDaddy's motion to compel (Docs. 124, 125); (4) GoDaddy's motion to amend the scheduling order (Docs. 133, 134); and (5) GoDaddy's motion to strike one of SiteLock's briefs (Docs. 171, 172).  Each motion is addressed below.

The Court also takes this opportunity to reiterate to the parties that their bickering and game-playing must stop.

## BACKGROUND

On April 30, 2019, SiteLock initiated this action by filing the complaint.  (Doc. 1.)

On September 3, 2019, the parties filed the Rule 26(f) report.  (Doc. 20.)

On September 9, 2019, the Court issued the Rule 16 scheduling order.  (Doc. 22.) Among other things, the scheduling order outlined the undersigned judge's process for resolving discovery disputes.  Under that process, parties are prohibited from filing written discovery motions without leave of court.  (*Id.* at 4.)  Instead, the parties are instructed as follows:

> Except during a deposition, if a discovery dispute arises and cannot be resolved despite sincere efforts to resolve the matter through personal consultation . . . the parties shall jointly file (1) a brief written summary of the dispute, not to exceed two pages, with explanation of the position taken by each party, and (2) a joint written certification that counsel or the parties have attempted to resolve the matter through personal consultation and sincere efforts as required by Local Rule of Civil Procedure 7.2(j) and have reached an impasse.  . . . Upon review of the written submission, the Court may set a telephonic conference, order written briefing, or decide the dispute without conference or briefing.

On February 28, 2020, SiteLock filed two discovery-dispute notices and GoDaddy filed a third.  (Docs. 32, 33, 34.)  SiteLock's notices raised disputes over seven different requests for production ("RFPs") and three different interrogatories while GoDaddy's notice raised disputes over three different RFPs and five different interrogatories.  (*Id.*)

On March 5, 2020, the Court held a two-hour hearing in an attempt to resolve the parties' discovery disputes.  (Doc. 36.)  During this hearing, it became increasingly

apparent that the parties hadn't adequately met and conferred beforehand, and the Court reminded counsel that they must meet and confer to resolve discovery issues without the Court's intervention.  (*Id.* at 2.)  The Court nevertheless resolved the discovery issues.  One of the issues addressed during the hearing was whether SiteLock should be required to produce its contracts with other third-party resellers.  The Court concluded the contracts were discoverable and thus ordered SiteLock to produce them.  (*Id.*)

On March 31, 2020, GoDaddy filed a motion requesting a two-month extension of all "outstanding deadlines in this matter" in light of the COVID-19 pandemic and the illness of GoDaddy's counsel.  (Doc. 37.)  Over SiteLock's opposition (Doc. 42), the Court granted the motion.  (Doc. 44.)  As a result, the deadline for answers to interrogatories and the RFPs was extended to June 22, 2020, and the deadline for the completion of fact discovery was extended to August 3, 2020.  (*Id.*)

On June 5, 2020, GoDaddy filed two motions: (1) a motion challenging SiteLock's attempt to designate, as "Confidential—For Counsel Only," the third-party contracts it had been ordered to produce (Doc. 50); and (2) a motion for an extension of certain deadlines (Doc. 57).  The Court granted the first motion and denied the second motion without prejudice.  (Doc. 80.)

On June 23, 2020, the parties filed another salvo of discovery-dispute notices.  (Docs. 70, 72, 73.)  GoDaddy filed one notice that raised disputes over one RFP, one interrogatory, and the adequacy of SiteLock's damages disclosures and included 317 pages of exhibits.  (Doc. 70.)  SiteLock filed two notices that raised disputes over five different RFPs and six different interrogatories and included 428 pages of exhibits.  (Docs. 72, 73.)

On July 14, 2020, the Court held a hearing in an attempt to resolve the parties' discovery disputes.  (Doc. 87.)  Although the Court was able to resolve many of the disputes, it ordered the parties to engage in additional meet-and-confer efforts with respect to a handful of issues and instructed the parties that, if they couldn't reach agreement, they were forbidden from presenting the resulting disputes in the form of a joint discovery-dispute notice—instead, the party seeking discovery would be required to file a motion to

compel and the parties were advised that the prevailing party would likely be awarded its costs and fees.  (*Id.* at 1.)

On June 24, 2020, the parties filed a stipulation to extend the deadline for responding to interrogatories and RFPs to July 6, 2020.  (Doc. 74.)  That request was granted.  (Doc. 75.)

On July 31, 2020, the parties filed a joint motion to extend various discovery deadlines.  (Doc. 92.)  That motion was granted.  (Doc. 99.)  As a result, the deadline for responding to interrogatories and RFPs was extended to September 18, 2020 and the deadline for the completion of fact discovery was extended to October 2, 2020.  (*Id.*)

On August 1, 2020, GoDaddy filed the first motion that is now pending before the Court—a motion for leave to file an amended answer and amended counterclaims.  (Docs. 93, 94.)  That motion became fully briefed in early September 2020.  (Docs. 109, 122.)

On August 31, 2020, SiteLock filed the second motion that is now pending before the Court—a motion to compel.  (Doc. 121.)  That motion became fully briefed in early October 2020.  (Docs. 164, 170.)

On September 9, 2020, GoDaddy filed the third motion that is now pending before the Court—a motion to compel.  (Docs. 124, 125.)  That motion became fully briefed in late September 2020.  (Docs. 163, 167.)

On September 11, 2020, GoDaddy filed the fourth motion that is now pending before the Court—a motion to amend the scheduling order.  (Docs. 133, 134.)  That motion became fully briefed in early October 2020.  (Docs. 166, 169.)

On September 18, 2020, the parties attempted to file even more discovery-dispute notices.  (Docs. 147, 152, 154.)  GoDaddy filed one notice that raised disputes over 10 different RFPs and included 259 pages of exhibits.  (Doc. 147.)  SiteLock filed two notices that raised disputes over 30 different RFPs, five different interrogatories, and a handful of other issues and included 1,033 pages of exhibits.  (Docs. 152, 154.)  GoDaddy then filed an array of objections to SiteLock's filings, including a motion to strike and supporting materials (Docs. 155, 156, 157), a request for expedited consideration (Doc. 158), and an

1    objection to some of the SiteLock's exhibits (Doc. 159).

2          On September 21, 2020, the Court issued an order denying the parties' discovery-

3    dispute notices without prejudice.  (Doc. 160.)  This order explained that, although the

4    Court's informal discovery-dispute process was intended to promote efficiency, the

5    parties' conduct—which included "bombard[ing] the Court with voluminous discovery

6    disputes, often cramming multiple disputed issues into the same notice (while still filing

7    multiple notices) in a seeming effort to downplay the magnitude of the issues presented"

8    and a "seeming inability to agree on just about anything related to discovery in this case"—

9    had made it "painfully obvious that the informal discovery-dispute process is not working."

10   Thus, the Court stated that any future discovery disputes needed to be presented as formal

11   motions.  (*Id.*)

12         On October 8, 2020, GoDaddy filed the fifth motion that is now pending before the

13   Court—a motion to strike the reply brief that SiteLock filed in support of its motion to

14   compel.  (Docs. 171, 172.)  That motion is not yet fully briefed but it may be resolved

15   without full briefing.

16         On October 13, 2020, GoDaddy sought permission to file additional briefing in

17   support of its motion for leave to amend.  (Doc. 174.)  That request was denied.  (Doc.

18   175.)

19                                    **DISCUSSION**

20   I.    GoDaddy's Motion For Leave To Amend

21         B.    **Legal Standard**

22         After a deadline established in a Rule 16 scheduling order expires, a party seeking

23   to amend its pleading must satisfy Rule 16(b)(4)'s "good cause" standard.  *Johnson v.

24   Mammoth Recreations*, *Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  This "standard

25   primarily considers the diligence of the party seeking the amendment . . . .  [C]arelessness

26   is not compatible with a finding of diligence and offers no reason for a grant of relief . . . .

27   If that party was not diligent, the inquiry should end."  *Id.* at 609.

28         …

1

     B.    **Background**

2           In the Rule 26(f) report, which was filed in September 2019, the parties represented

3  that they "do not currently anticipate the need to add additional parties or amend or

4  supplement the pleadings." (Doc. 20 at 3.) Based on this representation, the Court stated

5  during the Rule 16 scheduling conference that "I [am] inclined, rather than just saying no

6  motions to join or amend may be filed, [to give] the parties 30 days from today's date for

7  a deadline. Does that sound sufficient?" (Doc. 110 at 5.) After both parties confirmed

8  that a 30-day deadline was acceptable (*id.*), it was memorialized in the Rule 16 scheduling

9  order. (Doc. 22 at 1.)

10        In August 2020—that is, about ten months after the October 2019 amendment

11  deadline expired—GoDaddy filed a motion for leave to amend. (Docs. 93, 94.) GoDaddy

12  seeks permission to amend its answer to add one new affirmative defense (fraudulent

13  inducement) and two counterclaims (fraudulent inducement and breach of contract). (Doc.

14  93-1 at 24-49.) The new claims are premised, in significant part, on SiteLock's alleged

15  non-compliance with the Most Favored Nation ("MFN") clause in the Reseller Agreement,

16  which provided "that GoDaddy was receiving the most favorable pricing terms from

17  SiteLock and that GoDaddy would continue to receive SiteLock's most favorable pricing

18  throughout the parties' relationship." (*Id.* at 26 ¶ 7.) According to GoDaddy, it recently

19  discovered that "the pricing terms in the Reseller Agreement were less favorable than the

20  terms offered to at least three other companies at the time, and SiteLock subsequently

21  offered more favorable pricing terms to other parties during the parties' relationship." (*Id.*)

22  Although GoDaddy acknowledges that the scheduling order set a October 2019 deadline

23  for amending the pleadings, it contends that good cause exists under Rule 16(b) to alter

24  that deadline because it wasn't aware of the basis for the proposed new claims until it

25  received and reviewed SiteLock's third-party contracts, it diligently sought those contracts

26  during the discovery process, and it completed the review process and moved for relief less

27  than a month after the contracts were produced and re-designated. (*Id.* at 7-12.) GoDaddy

28  also contends that good cause exists because its proposed new counterclaims would be

considered compulsory under Rule 13.  (*Id.*)  Finally, GoDaddy contends its proposed new claims are not unfairly prejudicial, sought in bad faith, futile, or marred by undue delay. (*Id.* at 12-16.)

SiteLock opposes GoDaddy's request.  (Doc. 109.)  First, SiteLock contends that GoDaddy cannot satisfy Rule 16(b)'s diligence requirement as to its MFN-based claims because GoDaddy has long been aware (or should have been aware) of the alleged pricing discrepancies.  (*Id.* at 10-16.)  In support of this assertion, SiteLock (a) submits evidence showing that one of the allegedly lower prices was published on the third-party competitor's website in 2012 and other allegedly lower prices were disclosed to GoDaddy on several occasions in 2014 and 2015, as part of the parties' negotiation of addenda to the Reseller Agreement, (b) contends that GoDaddy's "discovery conduct" shows it was aware of its potential new claims long before it actually received the third-party contracts, as it propounded a discovery request for the contracts in October 2019 and explained during a hearing in March 2020 that the contracts might reveal MFN-related violations, and (c) argues that GoDaddy displayed a lack of diligence by waiting more than four months after receiving the third-party contracts to file its motion to amend.  (*Id.*)  Second, SiteLock contends that one of GoDaddy's proposed new counterclaims is not based on alleged violations of the MFN clause but is based on an entirely different theory (the "Up-Sell Counterclaim"), which "GoDaddy's brief barely mentions," and GoDaddy has not proffered any evidence concerning its diligence in pursuing that claim.  (*Id.* at 16.)  Third, SiteLock argues that, in light of the late timing of GoDaddy's request, unfair prejudice and undue delay would flow from granting it.  (*Id.* at 17.)

In reply, GoDaddy begins by disputing SiteLock's claim that it was aware of the alleged pricing discrepancies before this case began.  (Doc. 122 at 1-4.)  As for the price that was advertised on the competitor's website, GoDaddy doesn't dispute that the website was publicly available but argues it had no obligation to "scour the internet . . . [for] evidence of breach" in light of SiteLock's affirmative obligation to update the parties' pricing tables to reflect the lowest prices.  (*Id.* at 3.)  As for the other prices, GoDaddy

doesn't dispute that "a handful of invoices provided [by SiteLock] to GoDaddy between August 2014 and March 2015 included a series of line items made by the resellers at issue" but argues these disclosures were insufficient because (1) they involved a "document dump[] of irrelevant data," (2) SiteLock never mentioned this issue during the meet-and-confer process concerning the motion to amend, and (3) the invoices provided "far less definitive" descriptions of the products at issue "than the clear product names ascribed to the package terms in [the] reseller agreements."  (*Id.* at 1-4.)  Next, GoDaddy disputes SiteLock's claim that it could have pursued the new claims before the re-designation issue was resolved in July 2020, arguing that Rule 11 and the Arizona Rules of Professional Conduct require informed client consent and such consent could not be obtained until the "For Counsel Only" designation was removed.  (*Id.* at 4-7.)  Third, and in a related vein, GoDaddy disputes SiteLock's claim that it took too long to seek relief after obtaining the contracts through the discovery process, arguing that SiteLock's "own dilatory discovery conduct" was the cause of any delays and that GoDaddy "filed its Motion for Leave in less than a month" after the re-designation issue was resolved.  (*Id.* at 7-8.)  Fourth, as for the Up-Sell Counterclaim, GoDaddy argues that it acted diligently because the third-party contracts have given it "reason to believe that SiteLock is withholding other documents . . . that would show further breaches of the Reseller Agreement and subsequent addenda." (*Id.* at 8-9.)  Fifth, GoDaddy argues that SiteLock's complaints of undue delay and prejudice are without merit because the current discovery deadlines are unworkable and SiteLock still has not met many of its discovery obligations.  (*Id.* at 9-10.)

C.   **Analysis**

Although it presents a relatively close call, the Court concludes that GoDaddy was not diligent in seeking the proposed amendment and that Rule 16(b)(4)'s good cause standard has therefore not been satisfied.

First, GoDaddy's explanation for not complying with the October 2019 amendment deadline is that it "did not have notice of its MFN counterclaims until SiteLock was compelled to produce the third party reseller agreements" and that it "could not have known

. . . whether it had a good faith basis for asserting the proposed counterclaims against SiteLock until it viewed and analyzed those very same agreements." (Doc. 122 at 3, capitalization omitted.) The problem with this argument is that GoDaddy announced during the discovery hearing in March 2020—that is, before it obtained and reviewed any of the third-party contracts—that one of the reasons it was seeking to compel production of the contracts was to "test SiteLock's compliance with that [MFN] provision" and "assess whether GoDaddy did receive that [MFN] status." (Doc. 90 at 70.) In other words, GoDaddy didn't happen to stumble across evidence of the alleged MFN violations as it was reviewing documents that SiteLock had produced for other reasons (a scenario that might give rise to a finding of good cause). Instead, it appears that GoDaddy independently came up with its MFN-based theory of recovery after the Rule 16 scheduling conference and then began seeking discovery in an effort to support that theory. Had GoDaddy stated in the Rule 26(f) report (which, again, was filed in September 2019) that it was interested in exploring that theory through the discovery process, the Court likely would have agreed to set a mid-2020 deadline for amending the pleadings. Because GoDaddy instead represented that it had no intention of seeking to amend, and then agreed to an October 2019 amendment deadline, the Court is struggling to see how GoDaddy's belated decision to begin investigating its MFN-related claims in March 2020 could be characterized as good cause for amending the scheduling order.

Second, SiteLock disclosed spreadsheets and invoices to GoDaddy in 2014 and 2015 (as part of the negotiation process surrounding the addenda to the Reseller Agreement) that revealed some of the alleged MFN violations on which GoDaddy's proposed new claims are premised. Courts have not hesitated to deny amendment requests where, as here, the proposed new claims are premised on information that was in the possession of the movant before the amendment deadline elapsed. For example, in *In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 1726571 (S.D. Cal. 2018), the court denied a motion for leave to amend because the plaintiffs had received, but failed to review, a cache of documents before the amendment deadline that contained the "material facts"

upon which the amendment request was based. *Id.* at *4. Although the court acknowledged the diligence inquiry presented a "close call" in light of "the large number of documents and issues in this case" and the plaintiffs' explanation that they postponed their amendment request until "they had sufficient information" to support it, the court concluded that good cause was lacking because the plaintiffs "were in . . . possession" of the documents that would have supported their new claim "and should have been more diligent in reviewing [those] documents for information." *Id.* Similarly, in *Cameron v. Avalon Mobility Inc.*, 2018 WL 704326 (D. Ariz. 2018), the court denied a motion for leave to amend because the movant "had actual or constructive knowledge" of the facts underlying the proposed new claims "prior to the August 12, 2016 deadline to amend." *Id.* at *3.[1]

GoDaddy's arguments to the contrary are unpersuasive. First, it argues the Court should overlook its failure to notice the lower prices contained in SiteLock's 2014 and 2015 disclosures because the disclosures consisted of a "document dump[]." (Doc. 122 at 1.) But GoDaddy is a large, sophisticated technology company, the disclosures occurred as part of the parties' renegotiation and amendment of the very contract at issue in this case (Doc. 109-1 ¶¶ 8-11), and the contract was highly valuable. This wasn't, in other words, a situation where SiteLock tucked critical pricing data into some unrelated spreadsheet that GoDaddy had no reason to carefully review. Under these circumstances, it is difficult to see how GoDaddy's failure to perceive the significance of SiteLock's disclosures could be characterized as diligence. *Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief . . . .").

---

[1]     *See also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (affirming denial of motion for leave to amend where the district court found that "the party seeking to modify the scheduling order ha[d] been aware of the facts and theories supporting amendment since the inception of the action"); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (affirming denial of motion for leave to amend in part because "the information supporting the proposed amendment to the complaint was available to Sosa even before she filed suit"); *The Apollo Theater Found., Inc. v. W. Int'l Syndication*, 2005 WL 1041141, *19 (S.D.N.Y. 2005) (denying motion for leave to amend, where plaintiff argued it discovered the factual basis for proposed new claim during deposition, because "it was unnecessary for Apollo to wait until after the deposition . . . to raise a claim based on information within its control even before the initiation of this action").

1    GoDaddy also faults SiteLock for not raising the disclosure issue when the parties

2    were meeting and conferring about GoDaddy's intention to seek leave to amend.  (Doc.

3    122 at 2-3.)  Although the parties' utter inability to confer with each other in a professional

4    manner is troubling, the Court is aware of no authority holding that a party forfeits an

5    otherwise valid objection to a motion to amend by failing to raise it during the meet-and-

6    confer process, and GoDaddy has cited none.[2]

7    Next, GoDaddy contends that SiteLock's disclosures in 2014 and 2015 provided

8    "far less definitive" descriptions of the items at issue than SiteLock's third-party reseller

9    agreements.  (Doc. 122 at 4.)  The Court disagrees.  The spreadsheets at issue, which have

10   been filed under seal, provided enough information to have placed GoDaddy on notice of

11   its potential claims.  Again, GoDaddy had ample opportunity and motive to scrutinize the

12   spreadsheets.   To the extent it had questions about or perceived ambiguities in the

13   spreadsheets, it should have followed up.[3]

14   Finally, GoDaddy contends its amendment request is supported by good cause

15   because its proposed new counterclaims would be considered compulsory under Rule 13.

16   (Doc. 94 at 11.)  This argument conflates distinct concepts.  Although it is unfortunate that

17   GoDaddy's failure to exhibit diligence with respect to its proposed new counterclaims

18   means it may be barred from pursuing those claims in a future action, GoDaddy announced

19   at the outset of this case that it didn't anticipate a need to amend its pleadings and agreed

20   to a very short amendment deadline, which was subsequently memorialized in the Rule 16

21   scheduling order.  As the Ninth Circuit has emphasized, "[a] scheduling order is not a

---

[2]     The District of Arizona's local rules identify several types of motions as to which the parties must certify the adequacy of their meet-and-confer efforts.  *See, e.g.,* LRCiv 7.2(j) (discovery motions); LRCiv 7.2(l) (motions in limine); LRCiv 12.1(c) (motions to dismiss for failure to state a claim); LRCiv 54.2(d)(1) (motions for attorneys' fees). Motions to amend are not subject to the same requirements.

[3]     In response to SiteLock's showing that one of the alleged lower prices was publicly advertised on a competitor's website, GoDaddy argues it had no obligation to "scour the internet" for evidence supporting its proposed new claims.  (Doc. 122 at 3.)  The Court need not resolve this argument in light of the fact that SiteLock's lack-of-diligence argument isn't based solely on the fact that one of the lower prices was available on the internet.  As discussed above, the argument is based on the fact that SiteLock directly disclosed the alleged lower prices to GoDaddy.

- 11 -

1    frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel

2    without peril." *Johnson,* 975 F.2d at 610.  Because GoDaddy has not demonstrated good

3    cause for altering the amendment deadline, "the inquiry should end." *Id.* at 609.

4        Given this determination, it is unnecessary to address whether GoDaddy acted with

5    sufficient speed in seeking leave to amend after receiving SiteLock's third-party reseller

6    agreements and then successfully moving to relax the confidentiality designation

7    governing them.  As discussed above, the Court's lack-of-diligence finding is based on the

8    belated timing of GoDaddy's decision to begin pursuing such discovery and the fact that it

9    had at least constructive notice, before this case began, of the factual predicate for its

10   proposed new claims.[4]

11   II.   The Motions To Compel

12        A.   **Legal Standard**

13        Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure provides that "[a] party

14   seeking discovery may move for an order compelling an answer, designation, production,

15   or inspection" when the non-moving party "fails to produce documents . . . as requested

16   under Rule 34."

17        Rule 26(b), in turn, defines the "Scope and Limits" of discovery.  Under Rule

18   26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is

19   relevant to any party's claim or defense and proportional to the needs of the case,

20   considering the importance of the issues at stake in the action, the amount in controversy,

21   the parties' relative access to relevant information, the parties' resources, the importance

22

23   [4]    The Court also notes that, although GoDaddy's motion to amend focuses almost
     exclusively on its new MFN-based claims, GoDaddy's proposed pleading also seeks to
24   advance a different new theory of liability—a claim that SiteLock violated a contractual
     provision requiring SiteLock to remit a portion of all revenue generated from certain "up-
25   sell" transactions.  (Doc. 93-1 at 40-41 ¶¶ 52-55.)  Because GoDaddy's motion barely
     addresses that claim, GoDaddy has not met is burden of establishing diligence or good
26   cause.  GoDaddy's discussion of this issue for the first time in its reply (Doc. 122 at 9-10)
     came too late.  In any event, this appears to be another instance where GoDaddy belatedly
27   realized, midway through the discovery process, that it might have a viable theory on which
     to assert a counterclaim and then began pursuing discovery in order to support that potential
28   new claim.  For the reasons discussed above, this is not diligent conduct under the
     circumstances of this case.

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[5]  Under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable."

As for the burden of proof, "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b). In turn, the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence."  *Doe v. Swift Transp. Co., Inc.*, 2015 WL 4307800, *1 (D. Ariz. 2015).

B.    **SiteLock's Motion To Compel**

1.    Background

One of SiteLock's theories of liability in this case is that "GoDaddy breached the [Reseller] Agreement's requirement that GoDaddy 'shall endeavor to promote [SiteLock's] services.'"  (Doc. 1 ¶ 10.)  The complaint alleges that GoDaddy breached this requirement in two different ways:  "GoDaddy materially breached the Agreement by [1] promoting GoDaddy's own competing website security service, Sucuri, and [2] using SiteLock's trademark to redirect customers who clicked on a link for SiteLock's services to a page promoting Sucuri."  (*Id.* ¶ 64, brackets added.)

In the Rule 26(f) report, filed in September 2019, SiteLock announced its intention to seek discovery concerning these allegations.  (Doc. 20 at 9.)  Specifically, SiteLock stated that it would seek discovery concerning "GoDaddy's promotion of its own

---

[5]    The current version of Rule 26(b)(1) was enacted in 2015.  An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).  *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

competing website security service" and "GoDaddy's use of SiteLock's trademark to promote GoDaddy's competing service." (*Id.*)

In March 2020, SiteLock propounded the following RFPs to GoDaddy, all of which pertain to the failure-to-promote claim: (1) a request for "[a]ll Communications between GoDaddy and any GoDaddy customer regarding SiteLock's products or services, between March 22, 2017 and June 1, 2018" (RFP No. 53); (2) a request for "[a]ll Communications between GoDaddy and any GoDaddy customer regarding switching from SiteLock to Sucuri, between March 22, 2017 and June 1, 2018" (RFP No. 54); and (3) a request for "[a]ll Communications between GoDaddy employees regarding switching GoDaddy customers from SiteLock to Sucuri, between March 22, 2017 and June 1, 2018" (RFP No. 55). (Doc. 72-1 at 7-10.)

In June 2020, after GoDaddy objected to RFPs 53-55 on a variety of grounds and the parties could not resolve their disagreements via the meet-and-confer process, the parties sought judicial intervention by filing a joint discovery-dispute notice. (Doc. 72.)

On July 14, 2020, the Court held a hearing concerning this, and many other, discovery disputes. (Docs. 87, 91.) On the one hand, the Court found that the information sought by RFPs 53-55 was relevant: "SiteLock's theory in this case is that there is a clause that says 'endeavor to promote.' SiteLock is saying that got breached. And it just makes intuitive sense to me that the communications with the customers would potentially be the key evidence bearing on that issue. . . . [C]onceptually these emails are obviously relevant in some sense." (Doc. 91 at 33.) On the other hand, the Court stated that GoDaddy's objections based on proportionality had potential merit because "given how big of a company GoDaddy is and how many customers it has, . . . conducting this type of search for responsive customer communications would be a hugely time consuming and expensive endeavor." (*Id.*) Ultimately, the Court declined to make a ruling on proportionality because it was unclear whether the parties had "even gotten to the point in the meet and confer process of talking about how search terms might be limited to reduce the cost of this, and that sort of thing." (*Id.* at 34.) Thus, although the Court was "loathe to send this

back for more meeting and conferring" because it was "so apparent how poorly the parties are doing during the meet and confer process," the Court determined "the bottom line" was "that some of these emails are relevant . . . [but] [t]he parties have not gotten to the point where they're talking about specifics on what the costs of various searches are, how they might compromise to try to come up with a reasonable way to make sure that SiteLock is still getting the core information that it needs without overburdening GoDaddy." (*Id.* at 44.)   The Court therefore ordered the parties to meet and confer and provided specific guidance: "The parties have now heard loud and clear from me that I believe that SiteLock is entitled to some of this information.  I don't have enough information right now to make a definitive ruling about what the parameters of the key words would be, what the date ranges would be, that sort of thing.  Those are things that the parties need to address.  So that's why I'm sending you back to meet and confer." (*Id.* at 44-45.)  In the minute entry issued following the hearing, the Court clarified that "GoDaddy must provide concrete information during the meet-and-confer process about the cost of production." (Doc. 87 at 1.)

On July 23, 2020, SiteLock sent a lengthy discovery letter to GoDaddy.  (Doc. 121-4.)  SiteLock argued that RFP 55 could not be considered burdensome because it only sought internal communications between GoDaddy employees, not communications with customers, and "GoDaddy should be able to identify its employees involved in the effort to switch customers from SiteLock to Sucuri and run key word searches through their emails for this narrow period to identify and produce such communications." (*Id.* at 12.)  As for RFPs 53 and 54, SiteLock asserted that it needed "more information to evaluate GoDaddy's burden" because GoDaddy had not previously "explain[ed] *why* it cannot conduct a key word search of customer records or *why* searching these records would require the effort GoDaddy asserts." (*Id.* at 13.)

On July 31, 2020, GoDaddy sent a response letter to SiteLock.  (Doc. 121-1.)  With respect to RFPs 53-55, GoDaddy stated that it was not yet able to provide specific information about the burden of production but would provide it by August 12, 2020.  (*Id.*

at 7.)  GoDaddy further stated that, "in an effort to resolve the parties' dispute over these requests, GoDaddy is in the process of reviewing approximately 40,000 documents that may be responsive to RFP Nos. 53 and 54 and will endeavor to provide a document production to SiteLock by mid- to late-August," adding that "[o]f course, the review of 40,000 documents will take time." (*Id.* at 8.)  Finally, regarding RFP 55, GoDaddy rejected a search proposal that was set forth in SiteLock's letter and stated that "GoDaddy is currently researching the universe of responsive documents and will respond next week with its own proposed limitation." (*Id.*)

On August 4, 2020, the parties engaged in a meet-and-confer session that was transcribed.  (Doc. 121-5.)  With respect to RFPs 53-55, SiteLock asked for an updated timeline on when GoDaddy would provide burden-related information.  (*Id.* at 27.)  In response, GoDaddy stated: "We've had a problem . . . pulling the documents so that they can be reviewed.  And there is an engineer working with various technical limitations related to pulling the documents.  And we hope to provide details regarding those technical limitations as well as the efforts to pull them later this week." (*Id.*)  However, GoDaddy confirmed that it "should still be on track to get something to [SiteLock] at least starting mid to late August." (*Id.* at 28.)  As for the scope of documents to be produced, GoDaddy asserted that, because it viewed SiteLock's failure-to-promote claim as being limited to "the promotion of Sucuri through the alleged Lanham Act violation," it would be limiting its production accordingly.  (*Id.*)  In response, SiteLock stated: "That's new for us.  We disagree with that obviously." (*Id.* at 29.)

On August 7, 2020, GoDaddy sent another letter to SiteLock.  (Doc. 121-6.)  With respect to RFPs 53 and 54, GoDaddy stated that "GoDaddy would need to create a software tool—*i.e.,* write code—to allow the bulk pull of these documents as they are kept in the ordinary course of business and would need to reallocate engineering resources away from other ongoing, high priority legal and business matters for 4-7 days in order to attempt to do so" and that, given these constraints, GoDaddy "would expect that the timeline for counsel's responsiveness and privilege review would extend at least an additional month

from when the documents are pulled." (*Id.* at 3.)  With respect to RFP 55, GoDaddy stated that it was "currently engaged in determining the universe of custodians that would be implicated by this request" and added that "more than 20 teams, each with a significant number of members, may have been involved" and that GoDaddy was "awaiting additional information from the client as to the specific number of potential custodians for such documents, and expect[ed] to be in a position to provide a further update by August 14, 2020." (*Id.*)  GoDaddy further stated that it didn't believe it should be required to conduct the anticipated search due to concerns over proportionality and SiteLock's alleged "misrepresentations to the Court during the July 14, 2020 hearing as to the nature of its claims." (*Id.*)

On August 21, 2020, GoDaddy sent a follow-up letter to SiteLock.  (Doc. 165-4 at 151-52.)[6]  In this letter, GoDaddy requested a response to the issues it had raised in its letter of August 7, 2020 and stated: "[A]lthough we had hoped to provide the supplemental discovery responses and additional document production discussed in my correspondence of August 7, 2020 prior to today, we now expect to be in a position to provide same during the week of August 24, 2020.  We would also like to set a time certain for the parties to engage in a further meet and confer call with regard to our outstanding discovery issues.  We are currently available to meet and confer on September 1 and 2, 2020 . . . ." (*Id.*)

On August 26, 2020, SiteLock sent a response letter to GoDaddy.  (Doc. 121-7.)  With respect to RFPs 53-55, SiteLock began by noting that GoDaddy still had not provided concrete information about the cost of complying with the RFPs and had not followed up on its promise to provide updated information by mid-August 2020 concerning its proposed search protocols.  (*Id.* at 10-11.)  SiteLock also clarified that its failure-to-promote claim was not limited to the misuse of its trademark and encompassed the promotion of Sucuri.  (*Id.* at 11-13.)  SiteLock concluded by announcing its intention to file a motion to compel.  (*Id.* at 14.)

On August 27, 2020, SiteLock sent a different letter to GoDaddy agreeing to

---

[6]    SiteLock omitted this letter from the exhibits attached to its motion to compel.

participate in a meet-and-confer session on September 1 or 2, 2020.  (Doc. 170-2.)

On August 31, 2020, GoDaddy sent a lengthy discovery letter to SiteLock.  (Doc. 152-1 at 160-74.)  That letter did not contain any discussion of RFPs 53-55.  (*Id.*)

On August 31, 2020, SiteLock filed its to compel motion.  (Doc. 121.)  First, SiteLock argues that GoDaddy's burden-related objections to RFPs 53-55 are unavailing because GoDaddy has never provided concrete information concerning the cost of production (even though it was ordered to do so during the July 2020 hearing), missed its own mid-August 2020 deadline for providing an update regarding its proposed search protocols, and has provided conflicting explanations for why it would be too difficult and expensive to conduct the searches at issue.  (*Id.* at 10-12.)  Second, SiteLock argues that GoDaddy's "new argument" for resisting compliance with RFPs 53-55—*i.e.,* SiteLock's failure-to-promote claim is limited to the misuse of the SiteLock trademark—fails on the merits and is waived in light of GoDaddy's failure to raise it when initially objecting to RFPs 53-55.  (*Id.* at 12-13.)  Finally, SiteLock argues that GoDaddy should bear the cost of production and should be ordered to reimburse SiteLock for the fees and costs incurred in moving to compel.  (*Id.* at 13-14.)

GoDaddy opposes SiteLock's motion.  (Doc. 164.)  As an initial matter, GoDaddy argues that SiteLock failed to meet and confer in good faith following the July 2020 hearing, as required by Rule 37 and LRCiv 37.1, and instead "prematurely filed its Motion . . . as part of an ill-conceived strategic power play."  (*Id.* at 7-9.)  On the merits, GoDaddy argues it shouldn't be required to produce any documents in response to RFP 55 "because the requested production is not proportional to the needs of the case."  (*Id.* at 10-14, capitalization omitted.)  Specifically, GoDaddy argues that SiteLock admitted during a May 2020 meet-and-confer session that its failure-to-promote claim was limited to the misuse of the SiteLock trademark, so its effort to use RFP 55 to obtain discovery pertaining to a different promotion theory (*i.e.,* whether GoDaddy promoted Sucuri to the detriment of SiteLock) is impermissible.  (*Id.*)  In any event, GoDaddy argues that, to the extent the Court is inclined to order the production of any documents, the cost of compliance—which

GoDaddy estimates at $322,250 for RFPs 53-54 and $2,090,000 for RFP 55—should be shifted onto SiteLock "because retrieving, reviewing, and producing documents responsive to RFPs 53-55 will require—and already has required—an enormous effort by GoDaddy . . . while presenting an extremely low likelihood of finding anything of value." (*Id.* at 14-16.) GoDaddy also contends that its estimated cost of production for RFPs 53-54 can't be reduced because many of the documents contain the personally identifiable information ("PII") of GoDaddy customers and that its estimated cost of production for RFP 55 can't be reduced because a search for the keywords "SiteLock," "Sururi," and/or "Website Security" across all 2,273 potential custodians will produce a huge number of documents to be reviewed. (*Id.*) Finally, GoDaddy argues that the Court should reject SiteLock's request for costs and fees under Rule 37 and instead award GoDaddy its costs and fees incurred in responding to the motion. (*Id.* at 16-17.)

In reply, SiteLock argues (1) its motion was not premature because it repeatedly asked GoDaddy for concrete information about search terms and costs during the weeks following the July 2020 hearing, only to be "strung . . . along for an entire month with unfulfilled promises of unspecified 'updates,'" and because "GoDaddy has a monopoly on the information needed to craft 'constructive' solutions to its purported burdens . . . [since] [o]nly GoDaddy has information about its own recordkeeping, search capabilities, and employees" (*id.* at 7-9); (2) GoDaddy's burden-related arguments are premised on "gerrymandered and facially overbroad proposed searches" and unnecessary claims concerning the need for privilege review (*id.* at 2, 4-7); (3) GoDaddy's argument concerning the purportedly narrow scope of its failure-to-promote claim is based on a typo of the transcript from the parties' May 2020 meet-and-confer session, which has since been corrected, and GoDaddy has not addressed SiteLock's earlier argument that this objection is waived (*id.* at 2-3); and (4) GoDaddy's request for cost-shifting fails (*id.* at 9-11). Additionally, SiteLock proposes a new methodology for reducing GoDaddy's production costs and contends that, "[u]sing GoDaddy's own cost estimates," the cost of production under this approach "would be roughly $20,000." (*Id.* at 5.)

2.   <u>Analysis</u>

SiteLock's motion to compel will be granted.  As an initial matter, the motion is not premature and SiteLock's efforts to meet and confer with GoDaddy before filing the motion were sufficient.  During the July 2020 discovery hearing, the Court stated, in emphatic and unambiguous terms, that it viewed the information sought by RFPs 53-55 as relevant to SiteLock's failure-to-promote claim.  (*See, e.g.,* Doc. 91 at 44 ["[T]he bottom line is . . . that some of these emails are relevant."]; *id.* at 45 ["The parties have now heard loud and clear from me that I believe that SiteLock is entitled to some of this information."].)  The Court deferred ruling on SiteLock's request for relief at that time, which was functionally a motion to compel, only because the parties had "not gotten to the point where they're talking about specifics on what the costs of various searches are, how they might compromise to try to come up with a reasonable way to make sure that SiteLock is still getting the core information that it needs without overburdening GoDaddy."  (*Id.* at 45.)  The Court made clear that it would be GoDaddy's burden, during the resulting meet-and-confer process, to provide "concrete information . . . about the cost of production."  (Doc. 87 at 1.)

During the six weeks that followed, GoDaddy did not provide that information.  Instead, it wrote a series of letters to SiteLock that included vague and sometimes conflicting statements about what it was doing to search for responsive documents and how long the process would last.  For example, with respect to RFP 55, GoDaddy first claimed in its July 31 letter that it was "currently researching the universe of responsive documents and will respond next week with its own proposed limitation" (Doc. 121-1 at 8), then stated in its August 7 letter that "[w]e are awaiting additional information from the client as to the specific number of potential custodians for such documents, and expect to be in a position to provide a further update by August 14, 2020" (Doc. 121-6 at 3), then missed that August 14 deadline, then stated in its August 21 letter (without providing any more specifics) that it was available to meet and confer during early September (Doc. 165-4 at 151-52), then sent a lengthy letter to SiteLock on August 31 that didn't mention RFPs 53-

55 at all.  Now, in response to SiteLock's motion, GoDaddy claims it shouldn't be required to produce anything in response to RFP 55.  (Doc. 164 at 10-14.)  Given this backdrop, it was reasonable for SiteLock to conclude that the meet-and-confer process had stopped being productive and that judicial intervention was necessary.

GoDaddy's failure to provide clear, consistent answers on these questions also must be viewed in the broader context of this case.  The complaint was filed in April 2019.  It clearly described SiteLock's failure-to-promote claim.  The Rule 26(f) report was filed in September 2019.  It included a statement of SiteLock's intention to "seek[] discovery related to . . . GoDaddy's promotion of its own competing website security service, and . . . GoDaddy's use of SiteLock's trademark to promote GoDaddy's competing service." (Doc. 20 at 9.)  It also included a certification that GoDaddy did not "anticipate any issues relating to the preservation, disclosure, or discovery of ESI."  (*Id.* at 8.)  It is difficult to understand how GoDaddy could have made this certification if it hadn't even started considering how it planned to search for documents that would be responsive to SiteLock's anticipated discovery requests.  It is also difficult to understand how GoDaddy could have thought its approach was consistent with the Mandatory Initial Discovery Pilot Program ("MIDP"), under which GoDaddy had an affirmative obligation to gather and produce "facts that are relevant to the claims and defenses in the case, whether favorable or unfavorable."  *See* D. Ariz. G.O. 17-08 ¶ A(4).  Despite that obligation, GoDaddy was still unable in August 2020—some 16 months after this case began, and more than a month after the discovery hearing in which the Court emphasized the immediate need to formulate a reasonable search plan—to provide SiteLock with anything more than an embryonic description of its plan to locate and produce documents bearing on SiteLock's failure-to-promote claim.  This is unacceptable.

On the merits, GoDaddy's proportionality-based objection to RFP 55 (Doc. 164 at 10-14) is unavailing.  That objection is premised on the assumption that SiteLock's failure-to-promote claim is limited to trademark misuse.  But the claim is not so limited.  The complaint identifies trademark misuse as *one* way, but not the *only* way, in which GoDaddy

breached its alleged promotion obligation.  (Doc. 1 ¶ 10 ["GoDaddy was promoting its own competing website security service (called 'Sucuri') *by among other things* misusing SiteLock's trademark."] (emphasis added); *id.* ¶ 64 ["GoDaddy materially breached the Agreement by promoting GoDaddy's own competing website security service, Sucuri, *and* using SiteLock's trademark to redirect customers who clicked on a link for SiteLock's services to a page promoting Sucuri."] (emphasis added).)  Similarly, in the Rule 26(f) report, SiteLock differentiated between "GoDaddy's promotion of its own competing website security service" and "GoDaddy's use of SiteLock's trademark to promote GoDaddy's competing service" and identified them as independent bases for liability. (Doc. 20 at 9.)  In the face of all of this, GoDaddy is left to argue that SiteLock conceded, during a May 22, 2020 meet-and-confer session, that its failure-to-promote claim was based solely on trademark misuse.  The Court disagrees.  Although the parties hotly dispute whether the initial version of the transcript from the May 22 meeting contained a transcription error, SiteLock's communications to GoDaddy both before and after that meeting make clear that its promotion claim was not limited to trademark misuse.  For example, on May 15, 2020, SiteLock sent a letter to GoDaddy explaining that the documents sought by RFPs 53-55 were "directly relevant to SiteLock's claim that GoDaddy failed to endeavor to promote SiteLock—including by disparaging SiteLock to its own customers and convincing those customers to stop using SiteLock."  (Doc. 121-8 at 15-17.)  And during the meet-and-confer session on August 4, 2020, SiteLock's counsel reacted with immediate surprise and disagreement when GoDaddy attempted to characterize the failure-to-promote claim as being limited to trademark misuse: "That's new for us.  We disagree with that obviously."  (Doc. 121-5 at 29.)[7]

---

[7]     Additionally, GoDaddy's proportionality objection fails because it did not include, in its initial written objections to RFP 55, any argument that RFP 55 was overbroad or disproportionate because the failure-to-promote claim was limited to trademark misuse. (Doc. 72-1 at 10-11.)   Although GoDaddy did use the words "burden" and "not proportionate," its arguments were based on other grounds, such as the fact that the underlying documents contained confidential customer information.   (*Id.*)   "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).  *See also Ramirez v. Cty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("[T]he court will not consider any objections that were not asserted in the

GoDaddy's request for cost shifting (Doc. 164 at 14-16) will be denied.  Even assuming *arguendo* that cost shifting could be appropriate in a situation like this,[8] the Court is not persuaded by GoDaddy's extreme estimates of its production costs.  In formulating those estimates, it appears that GoDaddy made no effort to craft custodian or keyword limitations that might narrow the scope of documents to be gathered, reviewed, and produced.  Instead, it came up with a worst-case scenario and then proffered that scenario as a reason why SiteLock should be required to pay.  This approach is particularly disappointing because the Court made clear, during the July 2020 discovery hearing, that the parties should immediately start working together to come up with keyword and other limitations.  The proposed limitations that SiteLock proffered in its reply (which will dramatically reduce the cost of compliance) seem reasonable and GoDaddy has not offered any alternative.

Additionally, GoDaddy has not explained why it will need to spend hundreds of thousands of dollars so its attorneys can conduct a pre-disclosure review of communications between GoDaddy's representatives and GoDaddy's customers.  Such communications are obviously not privileged and, although some of the communications may contain customers' PII, GoDaddy has not explained why its attorneys must individually identify and redact such PII before disclosure.  There is already a protective order in place in this case.  *See, e.g., Beverage Distributors, Inc. v. Miller Brewing Co.*, 2010 WL 1727640, *4 (S.D. Ohio 2010) ("[O]rdinarily, the fact that the producing party is not harmed by . . . producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case."); *United States v. Castro*, 2019 WL 2184815, *1 (E.D. Cal. 2019) (allowing production of unredacted discovery pursuant to protective order because "[d]ue to the large quantity of discovery that contains PII,

---

responding party's original discovery responses . . . .").

[8]    *But see Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) ("When a discovery request seeks accessible data . . . it is typically inappropriate to consider cost-shifting.").

redacting all privacy-protected information would be difficult and time-consuming" and "a Protective Order . . . will permit the government to produce discovery that is unredacted, but preserves the privacy and security of victims, witness, and third parties").

For these reasons, SiteLock's motion to compel will be granted.  GoDaddy must (1) identify the 30 employees it has reason to believe were most likely to have participated, between March 2017 and June 2018, in internal efforts to switch customers to Sucuri or to have communicated with customers about such switching; (2) search those employees' email accounts for emails responsive to RFP 53-55 that reference both (a) "SiteLock" and (b) "Sucuri" or "Website Security"; (3) produce all responsive, non-privileged emails to SiteLock; and (4) produce the PDF containing its communications with customers (and attachments to those communications) to SiteLock on a "For Counsel Only" basis.

Finally, Rule 37(a)(5)(A) provides that when a motion to compel is granted, the court "must" require "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless (1) the motion was "premature," (2) the non-movant's conduct was "substantially justified," or (3) "other circumstances make an award of expenses unjust."  Here, although SiteLock prevailed on its motion to compel, and although the Court previously warned the parties that fees would likely be awarded in future discovery-related litigation, the Court concludes an award of fees would be "unjust."  This is because SiteLock waited until its reply to propose, for the first time, a series of custodian and keyword limitations intended to reduce the cost and burden of production.  Although the Court disagrees with GoDaddy's contention that SiteLock's arguments on this point must be stricken (*see* Part III *infra*), it is frustrating that SiteLock didn't include this proposal in any of its meet-and-confer communications with GoDaddy or in its initial motion.  Again, the parties' marching orders following the July 2020 hearing were to work together to come up with this sort of proposal.

…

…

1          B.      **GoDaddy's Motion To Compel**

2                  1.     Background

3          As noted, the deadline for responding to interrogatories and RFPs was September

4    18, 2020.  (Doc. 99.)

5          On May 6, 2020, GoDaddy served its second set of RFPs on SiteLock, which

6    encompassed RFPs 21-80.  (Doc. 126-1.)

7          Between June 5, 2020 and August 27, 2020, the parties exchanged a series of letters

8    concerning GoDaddy's second set of RFPs.  Many of the letters addressed whether certain

9    date restrictions should be applied.  SiteLock eventually agreed to produce, with date

10   restrictions, documents responsive to most of the second set of RFPs.  (*See* Doc. 126-2

11   [June 5, 2020 letter agreeing to produce, with date restrictions, documents responsive to

12   RFPs 21-23, 26, 31-33, 37, 56, 59-64, and 71-80]; Doc. 126-5 [June 16, 2020 letter

13   agreeing to produce, with date restrictions, documents responsive to RFPs 24, 27, and 34-

14   36]; Doc. 126-7 at 7-8 [July 2, 2020 letter agreeing to produce, with date restrictions,

15   documents responsive to RFPs 28-30, 46-53, 55, 58, and 66-70]; Doc. 126-11 [August 27,

16   2020 letter agreeing to produce, with date restrictions, documents responsive to RFP 45].)[9]

17         As of September 1, 2020, SiteLock had not produced any documents in response to

18   the second set of RFPs.  Accordingly, on that date, GoDaddy sent a letter to SiteLock that

19   accused SiteLock of discovery misconduct and bad faith, announced an intention to file a

20   joint discovery-dispute notice by September 4, 2020, and solicited GoDaddy's portion of

21   the joint notice.  (Doc. 126-12.)

22         On September 4, 2020, at 11:05 p.m., SiteLock produced 365 pages of documents

23   that were responsive to the second set of RFPs.  (Doc. 126-13; Doc. 126 ¶ 17.)

24         On September 8, 2020, SiteLock produced 24,324 pages of documents that were

25   responsive to the second set of RFPs.  (Doc. 126-14; Doc. 126 ¶ 19.)  The accompanying

26   cover letter stated that "we anticipate substantially completing our document production in

27

28   _____
     [9]      SiteLock apparently did not agree to produce documents responsive to RFPs 25, 38-
     44, 54, 57, and 65.

                                      - 25 -

1    response to these requests by the end of this week or early next week." (Doc. 126-14 at 3.)

2    The cover letter also stated that SiteLock believed GoDaddy's proposed discovery-dispute

3    notice was obsolete in light of recent developments. (*Id.*)

4        On September 9, 2020—that is, the day after receiving SiteLock's production of

5    nearly 25,000 pages of discovery material—GoDaddy filed its motion to compel. (Docs.

6    124, 125.) GoDaddy argues that, because SiteLock didn't produce any documents over a

7    three-month period, engaged in a "document dump" less than two weeks before the

8    September 18, 2020 production deadline, didn't specify which documents within the

9    "document dump" are responsive to which RFP, and suggested it will continue producing

10   documents up until the deadline expires, "only a court order will suffice." (Doc. 125 at 6-

11   7.) GoDaddy also contends it should be awarded its costs and fees. (*Id.* at 7-8.)

12       SiteLock opposes GoDaddy's motion. (Doc. 163.) First, SiteLock contends the

13   motion is "moot" because it disclosed most of the responsive documents via its productions

14   on September 4 and 8, 2020 and disclosed the remaining documents on September 11,

15   2020, and GoDaddy hasn't identified any specific deficiencies in the actual production.

16   (*Id.* at 3-5.)[10] Second, SiteLock contends the motion is "procedurally improper" because

17   GoDaddy didn't meet and confer before filing it, and indeed knew SiteLock was in the

18   process of producing the requested documents. (*Id.* at 5.) SiteLock also contends that,

19   under Rule 34(b)(2)(E)(i), it wasn't required to identify the specific RFP associated with

20   each document because it produced documents as they were maintained in the ordinary

21   course of business. (*Id.* at 4 n.3.)

22       In reply, GoDaddy argues its motion wasn't premature because SiteLock has

23   repeatedly made false statements about discovery-related matters throughout this case

24   (and, thus, GoDaddy had no reason to believe the representations in SiteLock's September

25   8 letter), SiteLock's September 8 letter only promised "substantial" compliance, and the

26   scheduling order requires that all discovery-related disputes be filed before the deadline for

27

28   _____

[10]    SiteLock's attorney avows to the September 11, 2020 production in his declaration.
(Doc. 163-1 ¶ 8 ["SiteLock produced 99 documents on September 4, 3,008 documents on
September 8, and 2,317 documents on September 11."].)

- 26 -

the completion of fact discovery.  (Doc. 167 at 2-3.)  GoDaddy also contends its motion is not moot because, "having completed its initial review of SiteLock's over 30,000 page production . . . GoDaddy is now in a position to state that . . . [a]lthough SiteLock's production includes a decent volume of documents with respect to 17 of the 49 RFPs and a minimal volume of documents with respect to 10 of the 49 RFPs, GoDaddy has been unable to locate any documents responsive to 22 of the 49 RFPs." (*Id.* at 4-5.)  Finally, GoDaddy faults SiteLock's counsel for failing to include an under-oath avowal that the production was complete.  (*Id.*)

2.  <u>Analysis</u>

GoDaddy's motion will be denied.  It is understandable why GoDaddy was frustrated with SiteLock's discovery conduct throughout June, July, and August 2020. During that period, SiteLock repeatedly promised to produce documents that were responsive to GoDaddy's second set of RFPs, only to repeatedly miss deadlines.  This is another example of the unacceptable discovery brinksmanship in which both parties have engaged throughout this case.

Nevertheless, between September 4-8, 2020, SiteLock produced nearly 25,000 pages of documents and promised that it would substantially complete its production before the September 18, 2020 deadline specified in the scheduling order.  The reasonable approach under these circumstances would have been for GoDaddy to choke back its frustration, begin reviewing the documents it had just received, wait another few days to see if any more documents arrived, and then evaluate whether there were any deficiencies in SiteLock's production that might necessitate a motion to compel.

GoDaddy didn't follow this approach.  Instead, it forged ahead by filing a preemptive motion to compel premised on the possibility that it might be able to identify, during the three-week period before it filed its reply, some as-yet-unrecognized deficiency in SiteLock's production.  As SiteLock correctly states in its response: "GoDaddy has put the cart before the horse.  It has filed a motion to compel before the promised document production was complete and now hints that it plans to litigate never-raised issues in a reply

1    brief.  This Court should reject this gamesmanship."  (Doc. 163 at 4-5.)

2         Nor was GoDaddy compelled by the scheduling order to file its motion when it did.

3    The scheduling order provides that "[a]bsent extraordinary circumstances, the Court will

4    not entertain fact discovery disputes after the deadline for completion of fact discovery

5    . . . .  Delay in presenting discovery disputes for resolution is not a basis for extending

6    discovery deadlines."  (Doc. 22 at 5.)  Here, although the deadline for responding to RFPs

7    was September 18, 2020, the deadline for completing fact discovery wasn't until October

8    2, 2020.  (Doc. 99.)  Thus, GoDaddy wasn't forced to file its motion on September 9, 2020.

9    It could have waited until September 18, 2020 to receive SiteLock's production and then

10   reviewed that production to determine whether there were any deficiencies.  If so, and if

11   efforts to meet and confer with SiteLock about the perceived deficiencies proved

12   unsuccessful, GoDaddy could have then filed a motion to compel by October 2, 2020.

13   There was no reason to file a motion on September 9, 2020 premised on the speculative

14   fear that the partially completed production might be deficient.

15        Under these circumstances, GoDaddy's argument in its reply that SiteLock

16   somehow "fail[ed] to carry the burden inherent in its mootness argument" (Doc. 167 at 5)

17   is unavailing.  It is GoDaddy's burden, as the movant, to identify some specific deficiency

18   that SiteLock should be compelled to remedy.  GoDaddy failed to do so.  Indeed, the only

19   argument in GoDaddy's motion that could charitably be categorized as a specific complaint

20   about the content of SiteLock's production is the claim that SiteLock needed to match up

21   each produced document with a corresponding RFP.  (Doc. 125 at 5.)  In response,

22   SiteLock notes that this criticism is foreclosed by Rule 34(b)(2)(E)(i).  (Doc. 163 at 4 n.3.)

23   And in reply, GoDaddy makes no effort to respond—instead, it seemingly abandons its

24   initial argument and seeks to raise entirely new arguments, based on new evidence,

25   concerning the purported incompleteness of the production.  (Doc. 167 at 4-5.)  Those

26   arguments are not properly before the Court.  *Kruszka v. Toyota Motor Corp.*, 2011 WL

27   9820198, *3 (C.D. Cal. 2011) ("The Ninth Circuit has held that arguments raised for the

28   first time in a reply are waived.  District courts have interpreted this rule to apply to

evidence as well.") (citation omitted).

Finally, Rule 37(a)(5)(B) provides that when a motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust."  Here, although neither side has covered itself in glory, the Court concludes that fees are warranted because GoDaddy's decision to file its premature motion was not substantially justified and there would be nothing unjust about awarding fees in this circumstance.

III.    GoDaddy's Motion To Strike

After the briefing on the dueling motions to compel appeared to be complete, GoDaddy filed a motion to strike SiteLock's reply, or, alternatively, for leave to file a sur-reply.  (Docs. 171, 172.)

In large part, the motion is premised on the accusation that SiteLock's counsel "resorted to clandestinely altering the transcripts of the parties' meet-and-confer conferences."  (Doc. 172 at 1.)  As discussed above, GoDaddy's opposition to RFP 55 is based on its belief that SiteLock's failure-to-promote claim is limited to trademark misuse.  Although SiteLock made clear on multiple occasions (*e.g.,* the complaint, the Rule 26(f) report, its May 15, 2020 discovery letter, and the August 4, 2020 meet-and-confer session) that the claim is not so limited, GoDaddy believes SiteLock made a concession on this point during a May 22, 2020 meet-and-confer session.  It appears that, after GoDaddy proffered the transcript from the May 22, 2020 meet-and-confer session as an exhibit to its opposition to SiteLock's motion to compel, SiteLock's counsel served the court reporter with an errata sheet, which the court reporter accepted, and the court reporter has now changed the transcript to remove the alleged concession.  In the motion to strike, GoDaddy contends this was improper.

The Court declines to strike SiteLock's reply, or allow further briefing, based on these developments.  As discussed in Part II.A above, the Court does not view the May 22

1    transcript as having much, if any, significance.  Indeed, GoDaddy waived any objection to

2    RFP 55 based on its "the failure-to-promote claim is limited to trademark misuse"

3    argument by failing to raise that argument in its initial objections to RFP 55.

4         GoDaddy also contends that SiteLock's reply should be stricken, or that it should

5    be granted leave to file a sur-reply, because SiteLock included new arguments in its reply.

6    The Court disagrees.  The keyword and custodian limitations that SiteLock proposed for

7    the first time in its reply can be viewed as a response to the keyword and custodian

8    limitations that GoDaddy proposed for the first time in its response.  It is permissible to

9    "file 'rebuttal' evidence to contravene arguments first raised by the non-moving party in

10   its opposition."  *TSI Inc. v. Azbil BioVigilant Inc.*, 2014 WL 880408, *1 (D. Ariz. 2014).

11   In any event, although the better practice would have been for SiteLock to propose those

12   limitations during the meet-and-confer process or in its initial motion, the motion was

13   necessitated by GoDaddy's foot-dragging and inconsistent statements during the six weeks

14   following the July 2020 discovery hearing, at which the Court explicitly ordered GoDaddy

15   to provide specifics about its cost of production and to work cooperatively with SiteLock

16   to find a way to resolve the issue.  It would be counter-productive to allow GoDaddy to file

17   a sur-reply so it can belatedly address an issue it was ordered to address three months ago.

18   IV.   GoDaddy's Motion To Amend The Scheduling Order

19         A.   **Background**

20         GoDaddy requests a 60-day extension of all pending deadlines in the scheduling

21   order.  (Docs. 133, 134.)  GoDaddy argues that it has been diligent in seeking to meet

22   existing deadlines and that complying with those deadlines was impossible in light of the

23   parties' unresolved disputes concerning written discovery, which have in turn interfered

24   with the scheduling of depositions.  (Doc. 134 at 4-5.)  GoDaddy also contends that

25   SiteLock will not be prejudiced by an extension, particularly because SiteLock is now

26   attempting to expand the scope of discovery to encompass new theories.  (*Id.* at 5-6.)

27         SiteLock "does not oppose GoDaddy's request for a two-month extension of the

28   October 3 fact discovery deadline and subsequent deadlines." (Doc. 166 ay 1.)  However,

1    SiteLock argues the Court should not extend the deadline for completing written discovery

2    because it diligently produced 15,623 documents by the September 18 deadline while

3    GoDaddy only produced 1,636 documents by that deadline.  (*Id.*)  Thus, SiteLock argues

4    that "the Court should order GoDaddy to finish its production of documents it has agreed

5    to produce within two weeks."  (*Id.* at 8.)  SiteLock also seeks to blame GoDaddy for all

6    of the discovery-related disputes in this case.  (*Id.* at 1-8.)

7        In reply, GoDaddy unsurprisingly argues that SiteLock is actually to blame for all

8    of the discovery-related disputes in this case.  (Doc. 169.)  GoDaddy also develops a theory

9    that SiteLock is strategically attempting to "prematurely push the discovery phase in this

10   action to conclusion" so that it doesn't overlap with the discovery phase of a different

11   lawsuit in Delaware.  (*Id.* at 4-5 & n.3.)

12       B.    **Analysis**

13       As noted, a party seeking to alter a deadline specified in a Rule 16 scheduling order

14   must demonstrate "good cause" for the requested extension.  Here, both sides agree that

15   good cause exists to extend most of the deadlines that hadn't expired at the time GoDaddy

16   filed its motion.  The Court agrees.  The parties' inability to complete written discovery

17   has created a domino effect that has interfered with the scheduling of depositions and

18   retention of experts.

19       The only disputed issue concerns whether to extend the deadline for responding to

20   interrogatories and RFPs.  With some reluctance, the Court will agree to extend this

21   deadline, too (although the extension will be a bit shorter than what GoDaddy requested).

22   The Court has already granted SiteLock's motion to compel GoDaddy to produce

23   documents responsive to RFPs 53-55.  GoDaddy must complete that production within

24   three weeks of this order.  During that period, the parties may complete their efforts to

25   respond to any other RFPs and interrogatories as to which compliance is overdue.

26   Although this approach arguably could be viewed as rewarding the party that failed to

27   complete its production obligations by previous deadline of September 18, 2020, plenty of

28   blame lies at each party's feet for unnecessarily complicating the discovery process.

1    Accordingly,

2    **IT IS ORDERED** that:

3    (1)    GoDaddy's motion for leave to file an amended answer and amended
4    counterclaims (Doc. 93) is **denied**.

5    (2)    SiteLock's motion to compel (Doc. 121) is **granted**.  However, no fees will
6    be awarded to the prevailing party.

7    (3)    GoDaddy's motion to compel (Doc. 124) is **denied**.  The parties are ordered
8    to meet and confer concerning SiteLock's entitlement to fees under Rule 37(a)(5).  If the
9    parties cannot resolve the matter, SiteLock must file a motion (and supporting evidence)
10   within 14 days of this order.  The motion should address both the amount of fees being
11   sought and whether the fees should be assessed against GoDaddy, GoDaddy's counsel, or
12   both.  GoDaddy's response must be filed within 14 days of the motion.  No reply may be
13   filed.

14   (4)    GoDaddy's motion to strike (Doc. 171) is **denied**.

15   (5)    GoDaddy's motion to amend scheduling order (Doc. 133) is **granted in part**.
16   The deadline for answers to interrogatories and production of documents is extended to
17   three weeks from today (*i.e.,* **November 8, 2020**).  The deadline for fact discovery is
18   extended to **December 2, 2020**.  The deadline for expert disclosures for the party with the
19   burden of proof is extended to **January 11, 2021**, for the responding party to **February 8,
20   2021**, and for rebuttal experts to **March 5, 2021**.  The deadline for expert depositions is
21   extended to **April 5, 2021**.  The deadline for good faith settlement talks is extended to
22   **April 16, 2021**.  The dispositive motions deadline is extended to **May 12, 2021**.

23   Dated this 19th day of October, 2020.

24

25

26   _____
27   Dominic W. Lanza
     United States District Judge
28

- 32 -