Paula L. Zecchini, AZ Bar No. 031880
Nathan Dooley, admitted *pro hac vice*
Sydney R. Hitchcock, admitted *pro hac vice*
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, WA  98104
Telephone: (206) 340-1000
Facsimile: (206) 621-8783
Email: pzecchini@cozen.com
     ndooley@cozen.com
     sydneyhitchcock@cozen.com

Attorneys for Defendant
GoDaddy.com, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SiteLock, LLC, | Case No.: 2:19-cv-02746-DWL |
| Plaintiff, | **DECLARATION OF NATHAN DOOLEY IN SUPPORT OF DEFENDANT GODADDY.COM, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO RFP NOS. 25, 38-44, 54, 57, AND 65** |
| v. | |
| GoDaddy.com, LLC, | |
| Defendant. | |

I, Nathan Dooley, declare as follows:

1.     I am an attorney duly licensed to practice law in the state of California, and admitted to this Court *pro hac vice*.  I am a member the law firm of Cozen O'Connor, counsel of record for Defendant GoDaddy.com, LLC ("GoDaddy").  I am providing this declaration in support of GoDaddy's Motion to Compel Production of Documents in Response to RFP Nos. 25, 38-44, 54, 57, and 65.  I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify in court, I could and would competently do so.

2.     On May 6, 2020, GoDaddy served its Second Set of Requests for Production of Documents ("RFPs") to Plaintiff SiteLock, LLC ("SiteLock").  A true and correct copy of relevant excerpts from these RFPs is attached hereto as **Exhibit 1**.

3.     As relevant to this motion, a number of the RFPs were directed at two discrete issues: (1) SiteLock's allegations in its Complaint, including its "endeavor to promote" claim, Lanham Act claim, and Unfair Competition claim; and (2) the information SiteLock shared with potential buyers about SiteLock's understanding of the parties' November 4, 2013 Reseller Agreement (the "Reseller Agreement"), and the revenues SiteLock earned from that contract.

4.     First, RFP Nos. 25, 38-44, and 54 were designed to obtain information about SiteLock's reputation, its interactions with customers, the manner in which it trained call-center employees to aggressively harass and scare customers into buying their products, and the percentage of revenues SiteLock earned from technical support calls that were attributable to purchases by GoDaddy customers.  These areas of inquiry are all relevant to SiteLock's claim that GoDaddy breached an obligation to "endeavor to promote" SiteLock, or somehow damaged SiteLock's reputation, when GoDaddy transitioned to selling its own website security products in 2017.  SiteLock claims that GoDaddy injured SiteLock's reputation, and GoDaddy is entitled to test that theory in discovery.

5.     These RFPs are also relevant to the direct sales SiteLock made to GoDaddy's customers ("Upsells").  The First Addendum to the Reseller Agreement ("First Addendum") authorized SiteLock to make direct sales to GoDaddy customers when those customers

contacted SiteLock, and required that SiteLock pay GoDaddy a portion of amounts earned from such sales.  A true and correct copy of the First Addendum is attached hereto as **Exhibit 2**.  GoDaddy served RFPs designed to assess the extent to which SiteLock failed to remit these payments, an issue that is directly related to GoDaddy's affirmative defense of set-off.  If SiteLock ultimately obtains an award in this action, GoDaddy is entitled to reduce that amount by the amount of SiteLock's outstanding debts and obligations to GoDaddy.

6.     Meanwhile, RFP Nos. 57 and 65 seek information SiteLock shared with potential buyers in early 2018 about SiteLock's understanding of the Reseller Agreement. SiteLock's position in this action is that the Reseller Agreement entitled SiteLock to a licensing fee for all sales of SiteLock products, as opposed to only those products that GoDaddy customers activated.  To defend this claim, GoDaddy served RFPs designed to obtain the information that SiteLock shared with potential buyers in 2018, which would show how SiteLock accounted for any amounts that SiteLock believed GoDaddy owed to it. Additionally, such documents would bear upon (a) SiteLock's claim that GoDaddy was somehow responsible for SiteLock's decreased earnings in the latter half of 2017 and early 2018, (b) SiteLock's Lanham Act claim, and (c) SiteLock's Unjust Enrichment claim.

7.     On June 5, 2020, SiteLock served its responses to the RFPs.  A true and correct copy of SiteLock's responses is attached hereto as **Exhibit 3**.  SiteLock served boilerplate objections to many of the RFPs, including RFP Nos. 25, 38-44, 54, 57, and 65.  *See, e.g.*, Ex. 3 at 11:11-16 ("SiteLock incorporates by reference its General Objections.  SiteLock also objects on the ground that this Request seeks documents that are not relevant to any party's claim or defense.  SiteLock further objects to this Request as overbroad and not proportional to the needs of this case.  Subject to and without waiving the foregoing objections, SiteLock is willing to meet and confer with GoDaddy so that GoDaddy can explain why it believes documents sought by this request are relevant.").

8.     On June 10, 2020, GoDaddy sent SiteLock a meet and confer letter outlining the deficiencies with SiteLock's responses, including SiteLock's failure to articulate a valid basis for *any* of its objections.  A true and correct copy of this letter is attached hereto as

**Exhibit 4**.  With regard to RFP Nos. 25, 38-44, and 54, GoDaddy explained that SiteLock had failed to articulate any particularized basis for its boilerplate objections.  *See id.* at 3-5.  As for RFP Nos. 57 and 65, GoDaddy explained that these RFPs seek documents that (1) show "the value SiteLock placed on any amount SiteLock now claims it is owed by GoDaddy," (2) would "likely show that SiteLock does not actually believe that it is owed anything at all," and (3) "show that SiteLock is a failing company, with an inferior product that is losing market share year over year."  *Id.* at 5-6.  GoDaddy explained that this third point was relevant to SiteLock's Lanham Act claim, and its failure to promote claim.  *Id.*

9.     On June 15, 2020, the parties discussed these RFPs during a meet and confer telephone conference.  A true and correct copy of the transcript for that call is attached hereto as **Exhibit 5**.  During that call, SiteLock's counsel, Thomas Schultz, explained that SiteLock's objections to RFP Nos. 25, 38-44, 54, 57, and 65 were all based on relevance.  *See id.* at 23:24-25 ("these overbroad objections are, I think, at their core relevance objections; right? It is overbroad because it seeks document that are irrelevant or not relevant, do not justify the request."); 24:21-25:11 ("given the breadth of the request, the lack of any relevance of these documents, those two factors I think combine to render it overbroad").

10.     GoDaddy responded by explaining that RFP Nos. 25 and 38-44 bear directly on SiteLock's Lanham Act claim and its failure to promote claim.  Undersigned counsel stated to Mr. Schultz that "SiteLock has, for example, argued that it was in some way tarnished by its approved association with Sucuri and that SiteLock somehow suffered because GoDaddy failed to promote it . . . it goes to SiteLock's arguments regarding failure to promote because, in fact, SiteLock's reputation in the marketplace was pretty poor and damaged by aggressive sales calls."  Ex. 3, at 25:12-26:25.  I also informed Mr. Schultz that these RFPs were relevant to GoDaddy's affirmative defense for set-off, and explained that "there's an additional factor here . . . SiteLock was required to remit to GoDaddy . . . a portion of the fees it earned on certain sales that it made to GoDaddy customers.  We can call it upselling . . . this is obviously directly relevant to the parties' claims because it would go to damages. . . . We are allowed to set off whatever SiteLock . . . owed to us."  *Id.* at 28:19-29:15; 30:1-7.

1   11. In response, SiteLock's counsel tried to limit GoDaddy's set-off defense to

2 SiteLock's violations of the Reseller Agreement's Most Favored Nation ("MFN") clause, and

3 claimed that GoDaddy could not seek discovery for its affirmative defenses.  Mr. Schultz

4 explained, "I will look at some cases on that," *id.* at 30:8-9, and suggested "the mere assertion

5 that the party who is suing you and may owe you money is another issue that has never been

6 raised before.  I am not sure that is enough to render a request relevant for purposes of

7 discovery.  I don't know if there's – I've never heard that before.  I don't know if there is any

8 real basis for it," *id.* at 30:12-16.  The "mere assertion that the party who is suing you and may

9 owe you money," of course, is the very basis for any claim for set-off.

10   12. Since that call, SiteLock has relied upon this argument, in one form or another,

11 to argue that GoDaddy is not permitted to seek discovery on this affirmative defense, but

12 SiteLock has not cited any authority for that position.

13   13. On that same June 15, 2020 call, GoDaddy explained that RFP Nos. 38-44 were

14 relevant to the same issues as RFP No. 25—SiteLock's failure to promote claim and Lanham

15 Act claim, as well as GoDaddy's affirmative defense for set-off.  *Id.* at 38:23-41:10.  Mr.

16 Schultz confirmed that the "same principle applies" to RFP Nos. 25 and 38-44.  *Id.* at 41:8-9.

17 Similarly, I explained to Mr. Schultz that RFP No. 54 was also relevant to SiteLock's failure

18 to promote claim and its Lanham Act claim.  *Id.* at 50:9-53:22.

19   14. The parties had a similar discussion with regard to RFP Nos. 57 and 65.

20 Consistent with its explanation in its June 10, 2020 letter, *see* Ex. 3 at 5-7, GoDaddy explained

21 on the call that RFP Nos. 57 and 65 would show how SiteLock accounted for the amounts

22 SiteLock claimed GoDaddy owed it, as well as the number of customers SiteLock had obtained

23 as a result of its relationship with GoDaddy.  *See id.* at 54:1-19, 56:10-18.  Furthermore, this

24 information would rebut SiteLock's attempt to hold GoDaddy liable for a decline in SiteLock's

25 sales after the termination of the Reseller Agreement.  *See id.* at 55:20-56:3.  SiteLock

26 confirmed that the parties were at an impasse on these RFPs based on SiteLock's relevance

27 objection.  *See id.* at 54:22-55:04, 56:19-21.

28

**DECLARATION OF NATHAN DOOLEY IN SUPPORT OF GODADDY.COM, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO RFP NOS. 25, 38-44, 54, 57, AND 65**

15.     On June 30, 2020, GoDaddy provided SiteLock with its portion of a Joint Summary of a Discovery Dispute for a number of RFPs, including RFP Nos. 25, 38-44, 54, 57, and 65.  A true and correct copy of the email attaching this Joint Summary is attached hereto as **Exhibit 6**.

16.     On July 2, 2020, despite SiteLock's prior declaration that the parties were at an impasse, SiteLock sent GoDaddy another meet and confer letter regarding GoDaddy's RFPs.  A true and correct copy of this letter is attached hereto as **Exhibit 7**.

17.     SiteLock elected to stand on its objections to many of GoDaddy's RFPs, including RFP Nos. 25, 38-44, 54, 57, and 65.  On July 13, 2020, GoDaddy sent SiteLock an updated Joint Summary to address these RFPs.  A true and correct copy of the email attaching this Joint Summary is attached hereto as **Exhibit 8**.

18.     On July 16, 2020, SiteLock sought to meet and confer yet again regarding GoDaddy's RFPs, including RFP Nos. 25, 38-44, 54, 57, and 65.  A true and correct copy of this email is attached hereto as **Exhibit 9**.

19.     On July 23, 2020, SiteLock sent GoDaddy a conferral letter that did not mention RFP Nos. 25 and 38-44, and that described RFP Nos. 57 and 65 as "grossly overbroad."  A true and correct copy of this letter is attached hereto as **Exhibit 10**.  SiteLock explained that its "overbroad" objection was still based on relevance. *Id.* at Ex. 10 at 18-19.  Specifically, SiteLock stated that "[b]ecause GoDaddy is a significant player in the hosting and website security marketplaces, many documents related to business valuations or efforts to find a buyer are likely to 'reference' GoDaddy for reasons that are entirely irrelevant to any party's claim or defense." *Id.*  SiteLock explained that "a list of other market participants in a business valuation may include GoDaddy, but GoDaddy's inclusion on that list would not make that document relevant." *Id.*  SiteLock also requested that GoDaddy provide a limitation on RFP Nos. 57 and 65. *Id.*

20.     GoDaddy responded with a letter dated August 7, 2020.  A true and correct copy of this letter is attached hereto as **Exhibit 11**.  GoDaddy stated that it did not find SiteLock's explanation satisfactory "absent a specific description as to why GoDaddy was included

among the list of other market participants, and the context in which it is mentioned." *Id.* at 4. "Indeed, SiteLock's explanation seems to indicate that the documents called for by the request *are* relevant." *Id.* SiteLock considers GoDaddy a competitor, "and given SiteLock's allegation that GoDaddy unjustly deprived SiteLock of market share by offering Sucuri, that may render the documents, to use SiteLock's example, describing GoDaddy in a business valuation as directly relevant to SiteLock's claim that it lost market share to Sucuri due to GoDaddy's alleged misconduct." *Id.* Although it did not believe a limitation was "necessary or warranted," in the spirit of compromise, GoDaddy offered to limit the temporal scope of RFP No. 57 to the time period of January 1, 2014 to April 2018, the approximate date of SiteLock's acquisition, and GoDaddy offered to limit the temporal scope of RFP No. 65 to the time period of January 1, 2014 through April 30, 2019. *Id.*

21.     On August 27, 2020, SiteLock rejected GoDaddy's proposed limitation and elected instead to stand on its objections. A true and correct copy of this letter is attached hereto as **Exhibit 12**. With respect to RFP Nos. 25, 38-44, and 54, SiteLock proposed that that the parties wait until the Court resolved GoDaddy's Motion for Leave to Amend, Dkt. Nos. 93-94, before submitting the issue as part of a Joint Summary. Exh. 12 at 2.

22.     GoDaddy responded on September 1, 2020. A true and correct copy of this letter is attached hereto as **Exhibit 13**. GoDaddy rejected SiteLock's proposal to delay bringing these issues to the Court, explaining that "it would no doubt find itself in a position where SiteLock claims that GoDaddy failed to timely take action in response to disputed discovery requests." Exh. 13 at 2. GoDaddy further stated that "RFP Nos. 25, 38-44, and 54 are currently at issue given the parties' current pleadings, including GoDaddy's affirmative defense for set-off. *See e.g.* June 15 Tr. at 29-35 (discussing discovery related upsell)." *Id.*

23.     That same day, GoDaddy served its portion of a Joint Summary that included the RFPs at issue in this Motion. A true and correct copy of the email attaching this Joint Summary is attached hereto as **Exhibit 14**.

24.     On September 8, 2020, SiteLock responded to GoDaddy's September 1, 2020 correspondence and claimed that its document production was responsive to "a number of"

GoDaddy's Requests, and that it "anticipate[d] substantially completing [SiteLock's] document production in response to these requests by the end of this week or early next week." SiteLock did not specify which of the "number" of GoDaddy's Requests its September 4, 2020 production was responsive to. Exh. 15 at 2. A true and correct copy of SiteLock's September 8, 2020 correspondence is attached hereto as **Exhibit 15**.

25. With respect to RFP Nos. 57 and 65, SiteLock continued to stand on its relevance objection. SiteLock, however, appears to have conceded the relevance of these topics by producing some documents that would be responsive to these RFPs. For example, on or about September 8, 2020, SiteLock produced a November 8, 2018 email forwarding a 2017 email exchange between SiteLock and a third party exploring the purchase of SiteLock demonstrating that SiteLock shared information sought by way of this Motion with at least on potential buyer. A true and correct copy of this email, which is Bates-labeled SiteLock_0071552, is attached hereto as **Exhibit 16**. A true and correct copy of the attachments to this email, Bates-labeled SiteLock_0071563 and SiteLock_0071580-0071658, are attached hereto as **Exhibit 17** and **Exhibit 18**, respectively. GoDaddy seeks to compel production of more documents of this nature.

26. On September 18, 2020, the parties filed a Joint Summary regarding the RFPs at issue in this motion. *See* Dkt. No. 147.

27. That same day, counsel for SiteLock emailed counsel for GoDaddy to reveal a number of significant errors in SiteLock's previously disclosed calculation of the number of activated products SiteLock attributed to sales made by GoDaddy. SiteLock admitted its prior calculations had been off by more than 152,068 activations, or 28%, explaining that "our collection included a category of sales recorded by SiteLock" that were inadvertently included in SiteLock's count of relevant activated accounts. GoDaddy understands the phrase "sales recorded by SiteLock" to mean that SiteLock made those sales itself, and because the sales were made by SiteLock to GoDaddy's customers, SiteLock was required to pay GoDaddy 30 cents for every dollar of revenue that SiteLock earned for those sales. It does not appear that SiteLock paid GoDaddy its revenue share for those sales. A true and correct copy of the email

7

chain dated September 18, 2020 wherein SiteLock revealed this error is attached hereto as **Exhibit 19**.

28.     On September 21, 2020, the Court denied that Joint Summary "without prejudice to GoDaddy's ability to present the disputes addressed therein in the form of a motion to compel" along with two other Joint Summaries filed by SiteLock on the same date, observing that the "informal discovery-dispute process is not working in this case."  Dkt. No. 160 at 4.

29.     On October 2, 2020, counsel for SiteLock sent GoDaddy a letter that set forth a sampling of common names for accounts SiteLock believed to be missing from GoDaddy's record of all relevant sales and activation data.  A true and correct copy of this correspondence is attached hereto as **Exhibit 20**.

30.     On October 9, 2020, GoDaddy responded to SiteLock's October 2, 2020 letter, and explained that the analysis of these names revealed that approximately twenty percent were Upsells, and an even larger percentage were not associated with any invoice that SiteLock has produced in this litigation.  A true and correct copy of this correspondence is attached hereto as **Exhibit 21**.

31.     Subsequently, I emailed SiteLock's counsel to confirm SiteLock still elected to stand on its objections to RFP Nos. 25, 38-44, 54, 57 and 65.  A true and correct copy of that email correspondence is attached hereto as **Exhibit 23**.

32.     Attached hereto as **Exhibit 24** are true and correct copies of invoices SiteLock sent to GoDaddy that show Upsells are applied as an offset to the amounts presented to GoDaddy for payment.

33.     It is telling that SiteLock's accounting of sales and activations has consistently changed.  SiteLock appears to argue that its data is suspect in Delaware, but the gospel truth in Arizona given that SiteLock's current counsel has alleged in <u>verified</u> pleadings filed in Delaware Chancery Court in *Gorny v. SiteLock Intermediate Holdings*, LLC, C.A. No. 20200104-PAF that SiteLock made material misrepresentations regarding the value of SiteLock, and the revenue it earned through SiteLock's relationships with third parties like

1  GoDaddy, *see* Dkt. Nos. 79 at ¶ 3, 79-1, 79-2.  A true and correct copy of the Verified Answer
2  and Counterclaims in that action is attached hereto as **Exhibit 22**.

3      34.    Attached hereto as **Exhibits 25, 26 and 27** are true and correct copies of
4  documents produced by third parties operating consumer review websites that demonstrate
5  SiteLock embarked on a significant public relations campaign aimed at cleaning up its
6  reputation for predatory sales tactics among consumers as it courted buyers in 2018.

7      Executed this 17th day of November, 2020 at Los Angeles, California.

8      I declare under penalty of perjury under the laws of the United States of America that
9  the foregoing is true and correct.

11         *s/ Nathan Dooley*
           Nathan Dooley