**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SiteLock LLC, | No. CV-19-02746-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| GoDaddy.com LLC, | |
| Defendant. | |

## INTRODUCTION

This case has been marred by a seemingly endless series of discovery disputes. (*See, e.g.*, Docs. 32, 33, 34, 50, 70, 72, 73, 121, 124, 147, 152, 154.)  In September 2020, the Court issued an order explaining that, due to the parties' "seeming inability to agree on anything," it needed to alter its normal discovery-dispute procedures. (Doc. 160.)  The following month, the Court issued a 32-page discovery order that addressed the parties' then-pending squabbles. (Doc. 176.)  That order chastised the parties for their failure to "seek[] cooperative, productive solutions" and "reiterate[d] . . . that their bickering and game-playing must stop." (*Id.* at 1-2.)

Unfortunately, since the issuance of that order, the parties have not found a way to work together.  Instead, they have filed thousands of pages of additional briefing regarding an array of new discovery disputes.  Five more discovery-related motions—three motions to compel, a motion for a protective order, and a motion to strike—are now fully briefed and ripe for resolution. (Docs. 181, 187, 205, 220, 221.)  Each is addressed below.

**BACKGROUND**

The background of this case is described in detail in the October 2020 order.  (Doc. 176.)  In a nutshell, Plaintiff SiteLock LLC ("SiteLock") and Defendant GoDaddy.com LLC ("GoDaddy") entered into a contract (the "Reseller Agreement") in 2013 under which GoDaddy agreed to market and sell SiteLock's website security services to GoDaddy's customers.  In this action, which was filed in April 2019, SiteLock accuses GoDaddy of various contractual breaches, as well as Lanham Act and state-law violations, and seeks over $20 million in damages.

In the case management order, the Court set forth an informal process for resolving discovery disputes.  (Doc. 22.)  The parties repeatedly (and sometimes prematurely) invoked that process during the early stages of the case, causing the Court to expend considerable time and resources.  (Doc. 176 at 2-5.)  Accordingly, in September 2020, the Court issued an order revoking the availability of the informal process and requiring the parties to present future discovery disputes as formal motions.  (Doc. 160.)

On October 19, 2020, the Court issued a lengthy order resolving several such motions.  (Doc. 176.)

On October 27, 2020, SiteLock filed the first motion now pending before the Court—a motion to compel GoDaddy to produce certain sales-related documents.  (Doc. 181.)  That motion became fully briefed on November 20, 2020.  (Docs. 190, 215.)

On November 6, 2020, SiteLock filed the second motion now pending before the Court—a motion to compel GoDaddy to produce certain documents related to the endeavor-to-promote claim.  (Doc. 187.)  That motion became fully briefed on December 3, 2020.  (Docs. 219, 226.)

On November 17, 2020, GoDaddy filed the third motion now pending before the Court—a motion to compel SiteLock to produce various other documents.  (Docs. 205, 206.)  That motion became fully briefed on December 11, 2020.  (Docs. 225, 238.)

On November 25, 2020, SiteLock filed the fourth motion now pending before the Court—a motion for a protective order.  (Doc. 220.)  That motion became fully briefed on

December 18, 2020.  (Docs. 237, 240.)

On November 30, 2020, GoDaddy filed the fifth motion now pending before the Court—a motion to strike portions of one of SiteLock's earlier reply briefs.  (Doc. 221.) That motion became fully briefed on December 21, 2020.  (Docs. 239, 243.)[1]

## DISCUSSION

I.    The Motions To Compel

A.    **Legal Standard**

Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the non-moving party "fails to produce documents . . . as requested under Rule 34."

Rule 26(b), in turn, defines the "Scope and Limits" of discovery.  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[2]  Under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable."

---

[1]    Some of the motions were accompanied by requests for oral argument, but those requests are denied because the issues are fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

[2]    The current version of Rule 26(b)(1) was enacted in 2015.  An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

As for the burden of proof, "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co., Inc.*, 2015 WL 4307800, *1 (D. Ariz. 2015).  "In turn, the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Id.*

B.   **SiteLock's Motion To Compel (Doc. 181) And GoDaddy's Motion To Strike (Doc. 221)**

1.   <u>Background</u>

As noted, SiteLock and GoDaddy entered into a contract under which GoDaddy agreed to market and sell SiteLock's website security services.  When a GoDaddy customer would purchase a SiteLock subscription and then take the additional step of activating that subscription, GoDaddy would remit a portion of the sale proceeds to SiteLock.  When a GoDaddy customer would purchase a SiteLock subscription but then fail to activate it, GoDaddy would not remit any of the sale proceeds to SiteLock.  One of the disputed issues in this case is whether GoDaddy was required by the parties' contract to remit payment to SiteLock in this latter circumstance—SiteLock says yes, GoDaddy says no.

During the discovery process, SiteLock propounded the following requests for production ("RFPs") to GoDaddy, all of which sought information that was related, in one way or another, to the total number of times GoDaddy sold a SiteLock subscription:

- <u>RFP 6</u>:   "All Documents and Communications concerning GoDaddy's obligation to pay SiteLock, including without limitation GoDaddy's obligation to pay SiteLock for Orders or Activations of SiteLock services."  (Doc. 181-2 ¶ 3.)
- <u>RFP 7</u>:   "All Documents and Communications concerning the number of Orders and the number of Activations."  (*Id.* ¶ 7.)
- <u>RFP 20</u>:   "All balance sheets, income statements, and other financial statements of GoDaddy.com LLC from January 1, 2013 to the present."  (*Id.* ¶

15.)

- <u>RFP 21</u>: "For each SiteLock service, product, or subscription that was ordered, purchased or otherwise acquired from or through GoDaddy or any of GoDaddy's platforms (including renewals), Documents sufficient to show (1) the type and level of product, service, or subscription (e.g., 'SiteLock Scan Basic'), (2) the date of each such order, purchase, or acquisition, (3) all amounts charged for each such order, purchase, or acquisition, (4) all amounts paid to any person (including but not limited to GoDaddy, SiteLock, or any GoDaddy customer) in connection with each such order, purchase, or acquisition (including any refunds), (5) the date(s) of any activation of that product, service, or subscription, if any, and any amounts paid to any person in connection with each such activation, and (6) the date(s) of any cancellation of that product, service, or subscription, if any, and any amounts paid to any person in connection with each such cancellation." (*Id.* ¶ 18.)

- <u>RFP 60</u>: "All Communications concerning any invoice that SiteLock submitted to GoDaddy, from November 4, 2013 through the present." (*Id.* ¶ 22.)

After GoDaddy raised various objections to these discovery requests, the parties engaged in extensive meet-and-confer efforts. In May 2020, GoDaddy produced a 418-page PDF document that purports to summarize, on a monthly basis, GoDaddy's sales of SiteLock's subscriptions. (*Id.* ¶ 30.) Later, in August 2020, GoDaddy produced a 7,156-page PDF document that purports to summarize, on a transaction-level basis, GoDaddy's sales of SiteLock's subscriptions. (*Id.* ¶ 48.)

…

…

…

- 5 -

2.      The Parties' Arguments

a.      **Motion To Compel**

SiteLock takes issue with GoDaddy's decision to disclose "made-for-litigation" summary documents in lieu of the underlying business records on which the summary documents are purportedly based.  (Doc. 181.)  SiteLock argues that GoDaddy's approach is particularly problematic because the summary documents appear to significantly understate the overall number of sales.  For example, SiteLock argues that although the summary documents report a total of just over 264,000 activated subscriptions, GoDaddy previously provided sales data and invoices to SiteLock (while the parties' relationship was still ongoing) that suggested GoDaddy had sold over 388,000 activated subscriptions.  (*Id.* at 2.)   According to SiteLock, "GoDaddy has been unable to explain the massive differences between the information it provided to SiteLock years ago and the PDFs that its counsel created for this litigation in 2020." (*Id.*)  SiteLock thus asks the Court to compel GoDaddy to produce the following four categories of business records: "(1) "contemporaneous transaction-level accounting records showing all of GoDaddy's sales of SiteLock subscriptions, (2) spreadsheets created by [GoDaddy employee] Lily Liang showing SiteLock's sales (and the data underlying them), (3) other internal reports, presentations, or communications showing GoDaddy's sales, and (4) customer receipts and invoices for all of GoDaddy's sales of SiteLock subscriptions." (*Id.* at 17, emphasis omitted.)

GoDaddy's opposes SiteLock's motion.  (Doc. 190.)  Fundamentally, GoDaddy argues that the information it has produced is complete and accurate and that SiteLock's arguments to the contrary are based on "the false premise that every activation of a SiteLock product resulted from a sale of a SiteLock subscription by GoDaddy," which overlooks that GoDaddy routinely gave away SiteLock subscriptions to its customers for free (meaning that, in cases where the customer subsequently activated the subscription, SiteLock would receive payment even though there was no original sale).  (*Id.* at 1.) GoDaddy also includes declarations from various personnel, including its senior director

of finance, who avers that "GoDaddy has produced the most granular transaction-related financial records of SiteLock products made by GoDaddy and its reseller partners" and thus "even if GoDaddy was compelled to produce customer transaction-related financial records of SiteLock products, it could not do so because no additional records occurred." (Doc. 191 ¶ 3.)  Finally, GoDaddy contends that SiteLock's motion should be denied for the following additional reasons: (1) SiteLock has not complied with Local Rule 37.1; (2) some of the categories of documents now sought by SiteLock are not responsive to the challenged RFPs, which call for the production of different and more limited categories of documents; (3) an order compelling the production of GoDaddy's entire general ledger would be inappropriate because the ledger contains sensitive information and SiteLock is a competitor; and (4) to the extent SiteLock still harbors concerns over the accuracy and completeness of GoDaddy's disclosures, it can explore those concerns through depositions. (Doc. 190 at 3-18.)

In reply, SiteLock continues to argue that GoDaddy's summary documents are incomplete. (Doc. 215.)  For example, SiteLock argues that one of GoDaddy's declarations contains an admission that 36,586 domain names were omitted from the summary charts. (*Id.* at 2-3 & n.2, citing Doc. 193 ¶ 12.)  Nor does SiteLock accept GoDaddy's proffered explanation for the discrepancy between the number of activations set forth in the summary documents and the number of activations set forth in the earlier disclosures (*i.e.,* the discrepancy arises from GoDaddy's practice of giving away some SiteLock subscriptions for free).  According to SiteLock, not only is this a new explanation that GoDaddy "did not raise . . . during the parties' five months of discussions" (*id.* at 3), but it is inaccurate because "[w]hen GoDaddy sold SiteLock together with other products, it was not giving away SiteLock for 'free'—rather, the price of the package incorporated the price of SiteLock's services." (*Id.* at 5.)  SiteLock also contends that GoDaddy's other explanations for why its disclosures are complete actually reveal the opposite.  (*Id.* at 5.)  Finally, SiteLock argues that it is not seeking the entirety of GoDaddy's general ledger, but only the subset of transactions showing SiteLock sales, and that GoDaddy barely addresses (and

does not deny the existence of) two of the categories of documents sought in its motion—reports generated by Ms. Liang and other internal reports, presentations, and communications.  (*Id.* at 6-10.)

> ### b.   **Motion To Strike**

GoDaddy has filed a motion to strike portions of SiteLock's reply or, alternatively, for permission to file a sur-reply.  (Docs. 221, 222.)  Among other things, GoDaddy objects to SiteLock's arguments and evidence concerning whether GoDaddy should be required to identify the instances in which a SiteLock subscription was included as part of a package, arguing that SiteLock "abuse[d] its right to rebut opposition papers by introducing . . . new evidence or arguments for the first time in a reply."  (Doc. 222 at 3-4.)

SiteLock opposes GoDaddy's motion.  (Doc. 239.)  SiteLock asserts:

> For the first time in its opposition to SiteLock's motion, GoDaddy made the bombshell admission that its made-for-litigation PDFs were, in fact, missing an entire category of sales of SiteLock that GoDaddy had sold in packages with other services.  There can be no dispute that these hidden sales are highly relevant to this case: the parties' contract required GoDaddy to pay SiteLock for packaged sales just as it required GoDaddy to pay SiteLock for standalone sales of SiteLock.  In five months of meeting and conferring, GoDaddy never mentioned these packaged sales as a reason for the missing sales in its made-for-litigation PDFs.  Instead, GoDaddy disclosed these missing sales for the first time in its opposition brief.

(*Id.* at 2.)  SiteLock's concludes that, because its "request for documentation on packaged SiteLock sales is directly responsive to GoDaddy's new admission in its opposition brief that it excluded such sales from its made-for-litigation PDFs," it "was entirely proper for SiteLock to include this request in its reply."  (*Id.* at 4.)

In reply, GoDaddy argues that "SiteLock's chief contention . . . is that GoDaddy concealed 'packaged' sales of SiteLock's products," yet "there are no such 'packaged' sales—this is a term invented by SiteLock's counsel to misrepresent testimony provided by GoDaddy's Senior Director of Finance, Michael Althoff," who made clear in his declaration that "in addition to selling SiteLock to its customers, whether as a standalone product or in a bundle, GoDaddy also gave SiteLock product subscriptions away for free." (Doc. 243 at 5, emphasis omitted.)

3.     <u>Analysis</u>

**a.     Motion To Strike**

"Unless made at trial, a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rules of Civil Procedure 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."  LRCiv 7.2(m).

SiteLock's reply is expressly authorized by LRCiv 7.2, and the motion to strike does not appear to be authorized by statute or rule.  GoDaddy's motion to strike is denied.

Nevertheless, the Court has the discretion to disregard arguments and evidence raised for the first time in the reply brief.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Thus, rather than strike any new arguments and evidence that were improperly raised for the first time in SiteLock's reply, the Court will simply disregard them.

**b.     Motion To Compel**

SiteLock's motion to compel is granted in part and denied in part.  As a threshold matter, GoDaddy's procedural and technical objections to the motion lack merit.  Under LRCiv 37.1(a), a party filing a motion to compel "shall set forth, separately from a memorandum of law, the following in separate, distinct, numbered paragraphs:  (1) the question propounded, the interrogatory submitted, the designation requested or the inspection requested;  (2) the answer, designation or response received; and  (3) the reason(s) why said answer, designation or response is deficient."  Here, SiteLock's motion was accompanied by a detailed, 39-page declaration from counsel.  (Doc. 181-2.) Paragraphs 2-23 of the declaration set out the first two categories of information required by LRCiv 37.1(a) and the remaining paragraphs set out the third.  To the extent there was any non-compliance with LRCiv 37.1(a), it was harmless.

Nor is SiteLock seeking to compel the production of documents that fall outside the scope of the challenged RFPs.  As noted, SiteLock seeks to compel four categories of documents: "(1) contemporaneous transaction-level accounting records showing all of

GoDaddy's sales of SiteLock subscriptions, (2) spreadsheets created by [GoDaddy employee] Lily Liang showing SiteLock's sales (and the data underlying them), (3) other internal reports, presentations, or communications showing GoDaddy's sales, and (4) customer receipts and invoices for all of GoDaddy's sales of SiteLock subscriptions." (Doc. 181 at 17.)  Because all four categories touch upon the total number of sales of SiteLock subscriptions, there is a colorable argument that each falls within RFP 7, which seeks "[a]ll Documents and Communications concerning the *number of Orders* and the number of Activations."  (Doc. 181-2 ¶ 7, emphasis added.)  At a minimum, all four categories of documents fall within RFP 21, which seek information about each SiteLock subscription "that was ordered, purchased or *otherwise acquired* from or through GoDaddy or any of GoDaddy's platforms."  (Doc. 181-2 ¶ 18, emphasis added.)

At the heart of the parties' dispute, which is highly technical in nature, is whether GoDaddy's summary documents are accurate and comprehensive.  On the one hand, the Court is not fully convinced of their comprehensiveness.  Although a high-level GoDaddy executive has submitted a detailed declaration explaining how GoDaddy tabulated its sales data and avowing to the completeness of that data (Doc. 191), this avowal is difficult to square with GoDaddy's apparent acknowledgement, in a different declaration, that information associated with 36,486 "unique common names" was omitted from its disclosures (Doc. 193 ¶ 12).  Additionally, it is not readily apparent from the parties' submissions whether GoDaddy ever sold SiteLock subscriptions as part of a package of products (as opposed to giving away SiteLock subscriptions for free) and if so, whether those transactions were included in the summary documents.  On the other hand, the Court is not convinced that the appropriate way to remedy these potential shortcomings is to order GoDaddy to produce its general ledger (or to scour its general ledger for all SiteLock-related sales) and/or to order SiteLock to produce all "customer receipts and invoices for all of GoDaddy's sales of SiteLock subscriptions."  GoDaddy is in the best position to understand its internal recordkeeping systems and has avowed, through the declaration of Mr. Althoff, that such steps would be fruitless.  Thus, subject to the one exception discussed

below, the Court will not compel GoDaddy to produce the first or fourth categories of documents requested in the motion to compel (*i.e.,* transaction-level accounting records and customers receipts/invoices). Instead, SiteLock may pursue its concerns over the comprehensiveness of GoDaddy's summary documents by deposing GoDaddy's Rule 30(b)(6) representative. The one exception concerns the 36,486 "unique common names" that were discussed in the declaration of GoDaddy's counsel. (Doc. 193 ¶ 12.) GoDaddy is ordered to produce the transaction receipts associated with these 36,486 unique common names and GoDaddy's request for cost-shifting associated with this production is denied.

This leaves the second and third categories of documents sought in SiteLock's motion—"spreadsheets created by [GoDaddy employee] Lily Liang showing SiteLock's sales (and the data underlying them)" and "other internal reports, presentations, or communications showing GoDaddy's sales." (Doc. 181 at 17.) As for the former category, the Court agrees with SiteLock (Doc. 215 at 9 n.6) that GoDaddy must disclose *all* reports, not just those run at the direction of Mr. Serani. It may be that no additional reports exist. But if they do, they are subject to disclosure. As for the latter category, GoDaddy does not deny that such reports exist and does not argue that it would be unfairly burdensome to gather and produce them—instead, GoDaddy argues they are irrelevant because they merely reflect revenue, which is the wrong measure of damages. (Doc. 190 at 6.) But as SiteLock correctly points out in reply, revenue figures may be relevant for a host of different reasons. (Doc. 215 at 9-10.) Thus, GoDaddy must produce this category of documents, too.

Rule 37(a)(5)(C) provides that when a motion to compel is granted and denied in part, the Court "may . . . apportion the reasonable expenses for the motion." Here, the Court declines to assess fees or costs against either side.

## C. **SiteLock's Motion To Compel (Doc. 187)**

### 1. Background

Another of SiteLock's theories of liability in this case is that "GoDaddy breached the [Reseller] Agreement's requirement that GoDaddy 'shall endeavor to promote

[SiteLock's] services.'"  (Doc. 1 ¶ 10.)  SiteLock alleges that GoDaddy breached this requirement in two different ways: (1) "by promoting GoDaddy's own competing website security service, Sucuri' and (2) by "using SiteLock's trademark to redirect customers who clicked on a link for SiteLock's services to a page promoting Sucuri."  (*Id.* ¶ 64.)  In the October 2020 order, the Court granted SiteLock's motion to compel certain categories of information related to these claims and made clear that "SiteLock's failure-to-promote claim is [not] limited to trademark misuse" and also encompasses "GoDaddy's promotion of its own competing website security service."  (Doc. 176 at 21-22.)

The parties' current dispute concerns another set of RFPs related to these claims. Specifically, SiteLock propounded the following four RFPs during the discovery process:

- <u>RFP 50</u>:   "Documents sufficient to show all revenue earned by GoDaddy from the sale of any Sucuri product or service from March 22, 2017 through June 1, 2018."

- <u>RFP 51</u>:   "Documents sufficient to show all customers who purchased Sucuri, from March 22, 2017 through June 1, 2018."

- <u>RFP 82</u>:   "Documents sufficient to show all GoDaddy customers who voluntarily switched from SiteLock to Sucuri, from March 22, 2017 through August 1, 2018."

- <u>RFP 83</u>:   "Documents sufficient to show all GoDaddy customers who were automatically switched from SiteLock to Sucuri, from March 22, 2017 through August 1, 2018."

(Doc. 187-1 ¶ 2.)  After GoDaddy raised various objections to these RFPs, the parties engaged in extensive meet-and-confer efforts.  (*Id.* ¶¶ 3-23.)  To date, GoDaddy has not produced any documents specifically in response to these RFPs (Doc. 187 at 2), although GoDaddy may have produced documents in response to different, somewhat overlapping RFPs (Doc. 219 at 14 [asserting that RFP 82 "is duplicative of other discovery requests"]).

…

…

1            2.     The Parties' Arguments

2        SiteLock argues that all four RFPs are relevant to its breach-of-contract claim

3 because they seek information that "will show the extent to which GoDaddy benefited—

4 by way of revenue and new customers—from disparaging SiteLock and persuading

5 customers to switch from SiteLock to Sucuri" and that the first two RFPs are separately

6 relevant to its Lanham Act claim because the Lanham Act authorizes disgorgement. (Doc.

7 187 at 5-6, 8-9.) SiteLock also attempts to address GoDaddy's anticipated counter-

8 arguments concerning relevance and burdensomeness. (*Id.* at 6-7, 10-12.) Finally,

9 SiteLock argues that the presence of a protective order should address any concerns that

10 GoDaddy may have about confidentiality. (*Id.* at 12.)

11        GoDaddy opposes SiteLock's motion. (Doc. 219.) As an initial matter, GoDaddy

12 once again argues that SiteLock's motion should be denied based on non-compliance with

13 LRCiv 37.1. (*Id.* at 3-4.) On the merits, GoDaddy argues that RFP 50 is overbroad because

14 it seeks all Sucuri-related revenue, yet SiteLock would only be entitled to recover a small

15 fraction of that revenue under the Lanham Act. (*Id.* at 4-8.) Similarly, GoDaddy argues

16 that its "wholesale revenue figures associated with" Sucuri are "not causally connected" to

17 SiteLock's endeavor-to-promote claim because GoDaddy was still allowed to promote and

18 sell Suruci under the contract, and thus SiteLock cannot show "that it would have enjoyed

19 all of the sale of Sucuri's products but for breach of the Endeavor to Promote claim." (*Id.*

20 at 8-9.) As for RFP 51, GoDaddy argues that SiteLock is, in reality, seeking its "highly

21 confidential customer list" as part of a "fishing expedition barred by the proportionality

22 dictates of Rule 26," reiterates the same overbreadth-related relevance argues it raised with

23 respect to RFP 50, and argues that the names of customers are rarely disclosed in Lanham

24 Act cases. (*Id.* at 11.) As for RFP 82, GoDaddy once again raises concerns about the

25 confidentiality of its customers, argues that evidence concerning customers who

26 voluntarily switched is particularly irrelevant, and contends it would be impossible to

27 comply with this RFP because the RFP calls for a speculative judgment as to why each

28 customer chose to switch. (*Id.* at 13-16.) Finally, as for RFP 83, GoDaddy incorporates

its earlier objections and contends that it has already produced responsive information in response to other RFPs.  (*Id.* at 16-17.)

In reply, SiteLock argues that GoDaddy's objections to RFP 50 fail because they are, "in substance, a challenge to the merits of SiteLock's claims or SiteLock's entitlement to the remedies it is seeking." (Doc. 226 at 2-3.)  SiteLock also contends that, even though it may not ultimately seek the entirety of GoDaddy's Sucuri-related revenues as its damages at trial, the overall revenue figure is still relevant and discoverable because "SiteLock might well offer a damages calculation based on the theory that, but for GoDaddy's breach, a sizeable percentage (but not necessarily all) of sales of Sucuri would have been sales of SiteLock." (*Id.* at 5.)  Finally, SiteLock argues that GoDaddy's proportionality-related objections are vague and undeveloped and "it is entirely conceivable that GoDaddy could produce the revenue information requested in RFP in a single spreadsheet." (*Id.* at 5.)  As for RFP 51, SiteLock argues that it is not seeking customer information for an improper purpose, and indeed "is willing to accept unique customers identifiers" in lieu of actual contact information, and explains that it needs the customer information so it can attempt to prove that those customers were persuaded to switch to Sucuri through GoDaddy's improper promotional tactics and/or Lanham Act violations.  (*Id.* at 6-7.)  Similarly, SiteLock argues that it requires the information sought in RFPs 82 and 83 so it can attempt to prove why customers switched, disputes GoDaddy's contention that such information was already produced in response to other RFPs, and argues that RFP 82's pursuit of information about "voluntary" switches does not require speculation about customers' motivations and simply requires GoDaddy to identify "the customers who switched to Sucuri through some sort of 'voluntary' (as opposed to involuntary) action, like clicking a button." (*Id.* at 8-10.)

### 3.   Analysis

SiteLock's motion is granted in full.  As an initial matter, GoDaddy's procedural and technical objections under LRCiv 37.1(a) once again miss the mark.  Enclosed with SiteLock's motion was a declaration that clearly set out the text of each RFP; the answer,

designation or response received; and the reasons why the response was deficient.  (Doc. 187-1.)

On the merits, the Court has little trouble concluding that RFP 50 is within the permissible bounds of discovery.  SiteLock is suing GoDaddy for improperly promoting GoDaddy's security service (Sucuri) to the detriment of SiteLock's competing service.  Although GoDaddy questions the viability of SiteLock's theory of liability, that question is not properly before the Court at this time.  SiteLock is thus entitled to obtain discovery concerning the overall amount of revenue that GoDaddy earned from Sucuri-related sales during the time period in question.  Although GoDaddy is correct that SiteLock likely won't be able to seek that entire amount as damages at trial, SiteLock has identified various reasons why the revenue figure may still be helpful in calculating its lesser damages estimate.  As Rule 26(b)(1) explicitly provides, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

The same logic largely controls the analysis as to RFPs 51, 82, and 83.  GoDaddy's primary argument is that it shouldn't be required to identify all of the customers who purchased Sucuri (and/or switched from SiteLock to Sucuri) during the time period in question because SiteLock won't be able to establish that its challenged practices were the cause of those decisions.  But this puts the cart before the horse.  SiteLock needs this information so it can attempt to develop its causation and damages theories.  The possibility that it may fail in that quest is not a reason to prevent it from obtaining discovery in the first instance.

The Court is cognizant that RFPs 51, 82, and 83 call for GoDaddy to produce customer-related information to a competitor.  Such information often carries a potential for competitive misuse.  Here, however, SiteLock has clarified that is "willing to accept unique customer[] identifiers" in lieu of the actual "contact information for those customers" and plans to use those identifiers to "cross-reference customers who purchased Sucuri against customers who previously clicked a deceptive link or customers who previously purchased SiteLock."  (Doc. 226 at 7.)  This clarification, coupled with the fact

that a protective order is already in place in this case, should address GoDaddy's concerns about competitive harm.

Finally, although GoDaddy is correct that an RFP requiring it to speculate why customers chose to switch from SiteLock to Sucuri would be improper, SiteLock has persuasively explained that the word "voluntarily" in RFP 82 doesn't require such speculation.

Rule 37(a)(5)(A) provides that when a motion to compel is granted, the court "must" require "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless (1) the motion was "premature," (2) the non-movant's conduct was "substantially justified," or (3) "other circumstances make an award of expenses unjust." Here, SiteLock is entitled to its fees and costs in seeking relief because its motion was not premature, GoDaddy's conduct was not substantially justified, and no other circumstances would make an award of expenses unjust.[3]

D.     **GoDaddy's Motion To Compel (Doc. 205)**

1.     Background

As discussed in Part I.C above, one of SiteLock's theories is that GoDaddy violated the "endeavor to promote" clause in the parties' contract. SiteLock does not merely allege that GoDaddy's challenged conduct caused it to lose sales—it also alleges that "its brand name and goodwill was tarnished by association with Sucuri, which did not provide the same excellent service as SiteLock and did not have the same goodwill in the industry." (Doc. 1 ¶ 44.)

One of GoDaddy's defenses to this claim is that any reputational harm SiteLock may have suffered during the time period in question wasn't due to GoDaddy's conduct—

---

[3]     The parties are ordered to meet and confer concerning SiteLock's entitlement to fees under Rule 37(a)(5)(A). If the parties cannot resolve the matter, SiteLock must file a motion (and supporting evidence) within 14 days of this order. The motion should address both the amount of fees sought and whether the fees should be assessed against GoDaddy, GoDaddy's counsel, or both. GoDaddy's response must be filed within 14 days of the motion. No reply may be filed.

instead, the reputational harm was due to SiteLock's own missteps.  Accordingly, during the discovery process, GoDaddy propounded the following 9 RFPs to SiteLock in an effort to explore this topic:

- RFP 25: "All DOCUMENTS RELATING TO complaints over the manner, methods, or scripts used by YOUR representatives who fielded phone calls from customers, including technical support calls, from 2013 to the present."

- RFP 38: "All DOCUMENTS RELATING TO the daily, monthly and annual sales goals of YOUR representatives who handled technical support calls, from 2013 to the present."

- RFP 39: "All DOCUMENTS RELATING TO employee manuals, guides, training materials or directives provided to YOUR representatives who handled technical support calls, from 2013 to the present."

- RFP 40: "All DOCUMENTS RELATING TO employee manuals, guides, training materials or directives provided to YOUR employees who responded to customer messages on YOUR social media accounts, from 2013 to the present."

- RFP 41: "DOCUMENTS sufficient to show the number of technical support calls YOU received and/or placed to all customers, for each year from 2013 to the present."

- RFP 42: "DOCUMENTS sufficient to show the number of technical support calls YOU received and/or placed to all customers that resulted in the sale of YOUR products or services, for each year from 2013 to the present."

- RFP 43: "DOCUMENTS sufficient to show the gross revenue YOU earned from technical support calls YOU placed to, or received from, all customers, for each year from 2013 to the present."

- RFP 44: "DOCUMENTS sufficient to show the gross revenue YOU earned

from technical support calls YOU placed to, or received from, customers introduced to YOU through GODADDY, for each year from 2013 to the present."

▪ RFP 54:  "DOCUMENTS sufficient to show the number of customer service and/or technical support representatives YOU employed, for each year from 2013 to the present."

(Doc. 207-1 at 6-10.)  After SiteLock raised various objections to these RFPs, the parties engaged in extensive meet-and-confer efforts.  (Doc. 207 ¶¶ 7-31.)  After those efforts failed, GoDaddy filed the pending motion to compel.  (Docs. 205, 206.)

Separately, one of GoDaddy's overarching defenses in this case is that, although SiteLock is now advancing a broad interpretation of the parties' contract in an effort to obtain damages, SiteLock previously acknowledged (in internal accounting documents and presentations to potential acquirors) that it wasn't entitled to such damages.  Accordingly, during the discovery process, GoDaddy propounded the following four RFPs to SiteLock in an effort to explore this topic:

▪ RFP 57:  "All DOCUMENTS RELATING TO YOUR efforts to secure a buyer for YOUR business that reference GODADDY, from 2013 to the present."

▪ RFP 58:  "All DOCUMENTS RELATING TO YOUR efforts to secure a buyer for YOUR business that incorporate amounts YOU believed YOU were owed by GODADDY, from 2013 to the present."

▪ RFP 65:  "All DOCUMENTS RELATING TO YOUR business valuations or appraisals that reference GODADDY, from 2013 to the present."

▪ RFP 66:  "All DOCUMENTS RELATING TO YOUR business valuations or appraisals that incorporate amounts YOU believed YOU were owed by GODADDY, from 2013 to the present."

(Doc. 207-1 at 10-11.)  SiteLock eventually agreed to produce documents responsive to RFPs 58 and 66 but has objected to RFPs 57 and 65.  (Doc. 225 at 15 ["SiteLock has

already agreed to search for documents responsive to RFPs 58 and 66."].)  After the parties' efforts to meet-and-confer over RFPs 57 and 65 proved unsuccessful (Doc. 207 ¶ 7-31), GoDaddy filed the pending motion to compel.  (Docs. 205, 206.)

### 2.   The Parties' Arguments

GoDaddy's motion to compel has two parts.  First, with respect to RFPs 25, 38-44, and 54, GoDaddy argues that (1) SiteLock forfeited any objection by initially providing boilerplate written objections; (2) the documents sought by the RFPs are relevant to GoDaddy's defense to SiteLock's Lanham Act and "failure to promote" claims because SiteLock "placed its reputation and public perception at issue by alleging that GoDaddy 'tarnished' SiteLock's 'brand name and goodwill'"; (3) the requested documents are also relevant to GoDaddy's affirmative defense for a set-off, because "they bear upon the sales that SiteLock made directly to GoDaddy's customers, for which SiteLock owes a commission"; and (4) SiteLock effectively conceded that the requested documents are relevant by agreeing to produce documents in response to other, similar RFPs.  (Doc. 206 at 5-10.)  Second, with respect to RFPs 57 and 65, GoDaddy argues that (1) SiteLock forfeited any objection by initially providing boilerplate written objections; (2) the documents sought by the RFPs are relevant because they will "show how SiteLock valued its own business, and how SiteLock valued and accounted for the claims asserted against GoDaddy" and may also "reveal that SiteLock—not GoDaddy—[was] responsible for the drop in its sales"; and (3) SiteLock effectively conceded that the requested documents are relevant by agreeing to produce documents in response to other, similar RFPs.  (*Id.* at 11-12.)

SiteLock opposes GoDaddy's motion.  (Doc. 225.)  First, as for RFPs 25, 38-44, and 54, SiteLock's primary argument is that GoDaddy's true purpose is to pursue discovery related an "upsell" counterclaim, yet the Court previously denied GoDaddy's motion for leave to assert that counterclaim.  (*Id.* at 1, 7-11.)  SiteLock also disputes GoDaddy's forfeiture claim, arguing that its initial objections weren't boilerplate (*id.* at 6-7); contends that it has already produced thousands of documents related to its "public perception" in

response to other RFPs (*id* at 11-14); and argues that the requested documents have no bearing on its endeavor-to-promote claim (*id.* at 14-15).  Second, as for RFPs 57 and 65, SiteLock again defends the sufficiency of its initial objections (*id.* at 6-7) and argues that the RFPs are "overbroad and duplicative" because it already produced the relevant valuation and appraisal information in response to RFPs 58 and 66 (*id.* at 15-17.)

3.    Analysis

As for RFPs 25, 38-44, and 54, GoDaddy's motion to compel is granted.  SiteLock squarely placed its reputation and goodwill at issue by alleging that GoDaddy's challenged conduct caused it to suffer harm in those areas.  (Doc. 1 ¶ 44.)  GoDaddy is therefore entitled to pursue discovery bearing on whether SiteLock's own conduct might be the true cause of the change.  RFPs 25, 38-44, and 54 seek documents that may be helpful in exploring that issue.  Notably, SiteLock doesn't argue that responding to these RFPs would be unduly burdensome—it simply contends the documents aren't relevant.  The Court has erred on the side of disclosure when evaluating the relevance of many of SiteLock's challenged discovery requests in this case and sees no reason to follow a different approach here.  And although SiteLock may have already produced other documents that touch upon its public perception, it has not demonstrated that the requested documents are coextensive with those materials.[4]

As for RFPs 57 and 65, GoDaddy's motion to compel is denied.  As an initial matter, SiteLock did not forfeit its ability to oppose GoDaddy's motion by providing boilerplate objections in its initial response to RFPs 57 and 65.  SiteLock wrote the following when responding to RFPs 57 and 65:

> SiteLock incorporates by reference its General Objections.  SiteLock also objects on the ground that this Request seeks documents that are not relevant to any party's claim or defense.  SiteLock also objects to this Request as overbroad and not proportional to the needs of this case.  Subject to and without waiving any of the foregoing objections, SiteLock is willing to meet

---

[4]    Because the Court concludes that RFPs 25, 38-44, and 54 are relevant to GoDaddy's defense of SiteLock's endeavor-to-promote and Lanham Act claims, it is unnecessary to resolve the parties' dispute over whether these RFPs also constitute a backdoor attempt to pursue discovery on the upsell counterclaim that was previously disallowed.

and confer with GoDaddy so GoDaddy can explain why it believes the documents sought by this Request are relevant.

(Doc. 207-1 at 36, 39.)

When viewed in isolation, this approach seems deficient.  SiteLock made no effort to explain *why* it viewed the RFPs are overbroad, disproportionate, or irrelevant—it simply mouthed those words without explanation and then attempted to place the burden on GoDaddy to articulate a relevance theory during the meet-and-confer process.  This isn't how the Rule 34 process is supposed to work.  Nevertheless, SiteLock's initial response to RFPs 57 and 65 must be viewed in proper context.  This response was part of SiteLock's broader response to dozens of RFPs.  (Doc. 207-1 at 18-46.)  SiteLock carefully analyzed those RFPs, providing detailed responses to nearly all of them, and it is clear that further meet-and-confer efforts would be needed based on the breadth of GoDaddy's requests and the extent of SiteLock's other, specific objections.  This wasn't, in short, a case of a party shirking its discovery obligations through the wholesale use of boilerplate objections.  Under these circumstances, the Court is unwilling to say that SiteLock forfeited its objections to RFPs 57 and 65 due to the lack of specific reasoning in its initial response to those two particular RFPs.

On the merits, the Court is persuaded by SiteLock's argument that RFPs 57 and 65 are overbroad in light of SiteLock's previous agreement to produce documents in response to RFPs 58 and 66.  The latter two discovery requests are specifically targeted at appraisals and valuations in which SiteLock discussed its perceived claims against GoDaddy.  This is the core information that GoDaddy needs to pursue its potential defense.  Forcing SiteLock to hunt down and produce all other appraisal and valuation documents that simply mention the name "GoDaddy" is unnecessary.

As noted, Rule 37(a)(5)(C) provides that when a motion to compel is granted and denied in part, the Court "may . . . apportion the reasonable expenses for the motion."  Here, the Court declines to assess costs against either side.

…

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II.     SiteLock's Motion For Protective Order (Doc. 220)

    A.     **Legal Standard**

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Similarly, Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order" and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by, *inter alia*, "forbidding the . . . discovery."

    B.     **Relevant Background**

In April 2019, SiteLock filed its complaint.  (Doc. 1.)  In this pleading, SiteLock repeatedly alleged that it performed all of its obligations under the parties' contracts except those it was prevented from performing by GoDaddy.  (*Id.* ¶¶ 47, 53, 58.)

In July 2019, GoDaddy filed its answer.  (Doc. 13.)  With respect to SiteLock's allegation that it performed all of its contractual obligations, GoDaddy generically denied this allegation without providing any specific reasoning.  (*Id.* ¶¶ 47, 53, 58.)  GoDaddy also asserted various affirmative defenses, including an affirmative defense entitled "Set-off."  (*Id.* at 14.)  The text of this affirmative defense provided as follows:

> Plaintiff's claims are barred in whole or in part by the doctrine of recoupment and/or set-off.  Defendant is entitled to offset and recoup against any judgment that may be entered for Plaintiff for all obligations owing to Defendant, including, but not limited to, any unpaid account balances and/or any damages incurred in connection with any termination of contracts between Defendant and Plaintiff.

(*Id.*)

In September 2019, the parties' filed the Rule 26(f) report.  (Doc. 20.)  In this document, SiteLock stated that it "anticipate[d] moving to strike certain of GoDaddy's affirmative defenses under Federal Rule of Civil Procedure 12(f)."  (*Id.* at 7.)  However,

SiteLock didn't subsequently file such a motion.

In October 2019, SiteLock served its initial discovery requests. (Doc. 237-1 ¶ 3; Doc. 237-2.) Notably, SiteLock didn't request any discovery or explanation related to GoDaddy's affirmative defense for set-off—instead, SiteLock only made requests concerning certain other affirmative defenses. (*Id.*)

During the discovery process, GoDaddy repeatedly informed SiteLock that its set-off affirmative defense was based, in part, on the theory that SiteLock had breached the "most favored nation" ("MFN") and "upsell" clauses in the parties' contracts. (Doc. 237-1 ¶¶ 5-6.)

In October 2020, the Court denied GoDaddy's motion for leave to assert two new counterclaims and a new affirmative defense premised on the theory that SiteLock had breached the MFN and upsell clauses. (Doc. 176 at 5-12.)

On November 6, 2020, GoDaddy issued subpoenas to four of SiteLock's current and former business partners. (Doc. 220-1 ¶ 20; Doc. 220-2 at 219-263.) These subpoenas seek documents related to whether SiteLock breached the MFN clause. (*Id.*) Each subpoena had a return date of November 23, 2020. (Doc. 220-2 at 223, 235, 246, 258.)

On November 6, 2020, GoDaddy also issued a Rule 30(b)(6) deposition notice to SiteLock. (Doc. 220-1 ¶¶ 17-19; Doc. 220-2 at 55-68.) Some of the noticed topics include whether SiteLock complied with the MFN and upsell clauses. (*Id.*)

On November 9, 2020, GoDaddy amended its MIDP disclosures to, *inter alia*, explain that its set-off affirmative defense is premised on breaches of the MFN and upsell clauses. (Doc. 220-1 ¶¶ 24-27; Doc. 220-2 at 70-104.)

C.    **The Parties' Arguments**

SiteLock seeks a protective order under Rule 26(c) that would quash the subpoenas and relieve it from any obligation to address MFN- and upsell-related topics during its Rule 30(b)(6) deposition. (Doc. 220.) In SiteLock's view, GoDaddy's requests for discovery on these topics are improper because the Court previously denied GoDaddy's motion for leave to assert new counterclaims and affirmative defenses based on them. (*Id.*) SiteLock

further argues that GoDaddy cannot rely on its set-off affirmative defense as the basis for seeking MFN- and upsell-related documents because that affirmative defense was written in generic terms and did "not even mention either clause." (*Id.* at 3.) Finally, SiteLock argues that GoDaddy cannot establish good cause for belatedly amending its answer to assert a new affirmative defense based on the MFN and upsell clauses and that allowing such an amendment would be prejudicial because SiteLock "relied on GoDaddy's answer" when formulating its discovery strategy. (*Id.* at 14)

GoDaddy opposes SiteLock's request for a protective order. (Doc. 237.) As an initial matter, GoDaddy argues that SiteLock's request is untimely as to some of the subpoenas because they had a production date of November 23, 2020 yet SiteLock didn't file its motion until November 25, 2020. (*Id.* at 4-5.) GoDaddy also argues that SiteLock hasn't satisfied the standard for relief under Rule 26(c) because it has only offered conclusory, generalized assertions of prejudice. (*Id.* at 5-6, 9-12.) On the merits, GoDaddy argues that it should be allowed to pursue discovery related to SiteLock's compliance with the MFN and upsell clauses because such evidence is relevant (1) to assess whether SiteLock complied with all of its contractual obligations, as SiteLock affirmatively alleged in the complaint, (2) to substantiate GoDaddy's affirmative defenses, including the affirmative defense for set-off, and (3) in light of SiteLock's recent disclosure of a new damages estimate that is predicated on the pricing terms set forth in the Reseller Agreement. (*Id.* at 6-9.) Finally, GoDaddy argues that it wasn't required to seek leave to amend its affirmative defenses to specifically mention the MFN and upsell clauses—to the contrary, its affirmative defenses are already broadly written in a manner that encompasses such theories and, to the extent SiteLock had concerns about a lack of specificity, it was SiteLock's burden to file a motion to strike (which SiteLock never did). (*Id.* at 12-17.)

In reply, SiteLock argues that GoDaddy's first theory of relevance—that GoDaddy is entitled to explore whether SiteLock complied with all of its contractual obligations because SiteLock affirmatively alleged such compliance in the complaint—is misplaced because "[i]t is well established [under Rule 9(c)] that a party who seeks to defend against

a breach-of-contract claim by asserting the other party's non-performance must describe that purported breach 'with particularity' in its answer" yet "GoDaddy failed to do so, instead offering only a generic denial of SiteLock's allegation that it performed under the contract." (Doc. 240 at 1, *see also id.* at 6-8.) As for GoDaddy's second theory of relevance—that the requested information bears on GoDaddy's affirmative defenses— SiteLock repeats its argument that, because GoDaddy's answer doesn't specifically identify the MFN and upsell clauses as providing the basis for GoDaddy's set-off affirmative defense, it cannot rely on those theories now (and cannot establish "good cause" to belatedly amend its answer). (*Id.* at 3-6.) Finally, SiteLock argues that it has adequately established prejudice, that it has standing to object to the subpoenas issued to its business partners, and that its motion was timely. (*Id.* at 8-11.)

D.    **Discussion**

SiteLock's motion for a protective order is denied. GoDaddy's answer includes an affirmative defense for set-off. (Doc. 13 at 14.) Although this affirmative defense doesn't specifically state that it is based on SiteLock's non-compliance with the MFN and upsell provisions of the parties' contracts, it is worded broadly enough to encompass such theories. Although SiteLock appears to have voiced concerns, during the early stages of the case, that some of GoDaddy's affirmative defenses were vague (Doc. 13 at 7), it never took any action to seek clarity with respect to the set-off defense—it didn't, for example, move to strike GoDaddy's set-off defense or ask GoDaddy to identify the facts and arguments supporting that particular defense. (Doc. 237-2 at 5.) Moreover, GoDaddy has submitted evidence that it repeatedly informed SiteLock, during the parties' meet-and-confer efforts, that its set-off defense is based (at least in part) on the MFN and upsell provisions. Given this backdrop, SiteLock has not met its burden of establishing "good cause" to categorically prevent GoDaddy from pursuing discovery related to those topics.

The Court does not view this outcome as inconsistent with its previous order denying GoDaddy's motion for leave to assert new counterclaims and a new affirmative defense based on the MFN and upsell clauses. It is one thing for a party to attempt to assert

new affirmative claims for relief long after the amendment deadline has passed (and during the latter stages of the discovery process), particularly where the party was on notice of those potential claims at the outset of the case. It is quite another to simply allow a party to pursue an affirmative defense that it timely asserted in its answer (and which its adversary never challenged).

GoDaddy requests its fees and costs in opposing SiteLock's motion for a protective order. (Doc. 237 at 17.) Rule 26(c)(3) provides that "Rule 37(a)(5) applies to the award of expenses," and Rule 37(a)(5)(B) provides:

> If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Here, GoDaddy is entitled to its fees and costs in opposing SiteLock's motion because the motion was not substantially justified and no other circumstances would make an award of expenses unjust.[5]

…
…
…
…
…
…
…
…
…

---

[5] The parties are ordered to meet and confer concerning GoDaddy's entitlement to fees under Rule 37(a)(5)(B). If the parties cannot resolve the matter, GoDaddy must file a motion (and supporting evidence) within 14 days of this order. The motion should address both the amount of fees sought and whether the fees should be assessed against SiteLock, SiteLock's counsel, or both. SiteLock's response must be filed within 14 days of the motion. No reply may be filed.

Accordingly,

**IT IS ORDERED** that:

1.  SiteLock's motion to compel (Doc. 181) is **granted in part and denied in part**.

2.  SiteLock's motion to compel (Doc. 187) is **granted**.

3.  GoDaddy's motion to compel (Doc. 205) is **granted in part and denied in part**.

4.  SiteLock's motion for protective order (Doc. 220) is **denied**.

5.  GoDaddy's motion to strike (Doc. 221) is **denied**.

Dated this 6th day of January, 2021.

Dominic W. Lanza
United States District Judge