**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SiteLock LLC, | No. CV-19-02746-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| GoDaddy.com LLC, | |
| Defendant. | |

In an order issued earlier this year, the Court observed that "[t]his case has been marred by a seemingly endless series of discovery disputes" and then proceeded to resolve the parties' latest batch of squabbles. (Doc. 247 at 1.) Here we go again. Pending before the Court are two more discovery-related motions: (1) GoDaddy's motion for a protective order (Doc. 251) and (2) SiteLock's motion to compel (Doc. 255). Also pending are GoDaddy's five motions to seal. (Docs. 262, 265, 270, 274, 284.)[1]

I. GoDaddy's Motion For Protective Order

A. **Background**

Because the many discovery disputes in this case have been recounted in earlier orders, it is unnecessary to summarize them here. The current dispute concerns SiteLock's attempt to conduct a Rule 30(b)(6) deposition of GoDaddy.

On November 6, 2020, SiteLock served its original Rule 30(b)(6) deposition notice

---

[1] After reviewing the seven pending motions, the Court issued a tentative ruling (Doc. 287) and then held oral argument (Doc. 290), which was useful in clarifying some of the technical issues related to motion to compel.

on GoDaddy, which included 19 topics.  (Doc. 253-1 at 55-68.)  This notice did not set a firm date for the deposition and invited GoDaddy to meet and confer about scheduling.  (*Id.* at 55-56.)  The parties have enclosed correspondence confirming that they did, indeed, engage in extensive meet-and-confer efforts of the course of the next two months, which concerned both the date of the deposition and GoDaddy's objections to the 19 noticed topics.  (*Id.* at 132-52 [GoDaddy's letter of Nov. 30, 2020]; *id.* at 154-186 [SiteLock's letter of Dec. 23, 2020]; *id.* at 188-210 [GoDaddy's letter of Jan. 8, 2021]; *id.* at 212-14 [GoDaddy's email of Jan. 11, 2021]; *id.* at 216-20 [GoDaddy's email of Jan. 15, 2021]; *id.* at 222-28 [SiteLock's email of Jan. 16, 2021]; *id.* at 230-38 [SiteLock's email of Jan. 22, 2021].)

On January 24, 2021, SiteLock served an amended deposition notice on GoDaddy.  (*Id.* at 240-52.)  This notice set forth the same 19 topics but now identified a specific date for the deposition of February 5, 2021.  (*Id.*)  At the time, this was the deadline for the completion of fact discovery set forth in the scheduling order.  (Doc. 247.)

On January 31, 2021, GoDaddy sent a letter to SiteLock concerning the amended deposition notice.  (Doc. 253-1 at 330-31.)  In this letter, GoDaddy confirmed that, "[i]n the interest of finality, and in order to ensure the efficient completion of discovery," it "intend[ed] to provide testimony in response to" nearly all of the 19 topics identified in the amended notice.  (*Id.*)  Specifically, GoDaddy stated that it would provide testimony "as noticed" in response to 11 of the topics (Topic Nos. 2, 3, 4, 5, 7, 8, 9, 12, 14, 15, and 16) and would provide testimony "as limited by agreement" in response to five of the topics (Topic Nos. 1, 10, 11, 17, and 18).  (*Id.*)  As for the remaining three topics, the areas of continued disagreement were as follows: (1) as for Topic 6, GoDaddy stated it would address this topic "as noticed, with the exception of" subdivision h; (2) as for Topic 13, GoDaddy stated it would address this topic "as noticed, with the exception" that it would only agree to provide information "as to the timeframe from March 22, 2017 through June 1, 2018"; and (3) as for Topic 19, GoDaddy stated that it "considers the parties at an impasse."  (*Id.*)

On February 3, 2021—two days before the scheduled deposition date—the parties filed a joint notice in which they, among other things, requested an extension of the fact discovery deadline until February 26, 2021 so GoDaddy's Rule 30(b)(6) deposition could be postponed.  (Doc. 249.)  This request was granted.  (Doc. 250.)[2]

On February 10, 2021, SiteLock served a second amended deposition notice on GoDaddy.  (Doc. 253-1 at 408-24.)  It stated that the deposition would begin on February 24, 2021.  (*Id.*)  It also differed substantively from the previous version in two respects: *first*, it changed the definitions of certain terms, including the terms "GoDaddy," "Order," "Signup," "Customer," "Subscription." "Type," "Level," and "Sale"; and *second*, it added three new topics.  (Doc. 258-2 at 22-38 [redline version of second amended notice, showing changes]; *id.* at 40-47 [chart summarizing changes].)  In a cover email, SiteLock explained that it had changed the definitions "to reflect the parties' discussions and compromises over the last few weeks" and had added the new topics, which largely addressed GoDaddy's set-off defense, in light of a January 6, 2021 ruling (issued after service of the original notice) that authorized GoDaddy to pursue such a defense.  (Doc. 258-2 at 65.)

On February 18, 2021, GoDaddy wrote a letter to SiteLock concerning the second amended notice.  (Doc. 253-1 at 426-30.)  In this letter, GoDaddy objected to the timing of the notice, the changed definitions, the addition of the new topics, and SiteLock's failure to incorporate some of the limitations on other topics to which the parties had previously agreed.  (*Id.*)  The letter stated that, if SiteLock did not address these issues by the next day at 5:00 pm, GoDaddy "will have no choice but to proceed with seeking relief from the Court."  (*Id.*)

On February 19, 2021—the next day—GoDaddy filed the pending motion for protective order.  (Docs. 252, 253.)

On February 22, 2021, SiteLock sent a letter to GoDaddy.  (Doc. 258-2 at 64-67.)

---

[2]     In their briefs, each side accuses the other of gamesmanship and bad faith and argues that the other should be deemed responsible for the failure to go forward with the Rule 30(b)(6) deposition on the originally scheduled date of February 5, 2021.  (Doc. 252 at 3-4 & n.1; Doc. 258 at 3-4.)  The details of these counter-accusations are tedious and unnecessary to recount here.

Among other things, this letter stated that GoDaddy's motion was premature (because it had been filed "without awaiting a response from SiteLock, and without conducting any telephonic meet and confer"), advised that SiteLock intended to go forward with the deposition on February 24 as scheduled, and agreed to modify the second amended notice to account for some (but not all) of GoDaddy's objections.  (*Id.*)[3]

On February 23, 2021, GoDaddy wrote a response letter.  (*Id.* at 69-70.)  In this letter, GoDaddy stated that it would be producing witnesses on the scheduled dates but those witnesses' testimony would be limited to certain topics and were "not being offered to provide corporate testimony on GoDaddy's behalf in accordance with the definitions set forth in the Second Amended Notice, nor with respect to the newly added, modified or expanded topics set forth therein, to the extent same differ from those set forth in the Amended Notice."  (*Id.*)

That same day, SiteLock wrote its own response letter.  (*Id.* at 72-73.)  Among other things, SiteLock stated that "GoDaddy's intention to limit its testimony to the topics set forth in [the first amended notice] is unacceptable" and threatened to "seek appropriate relief from the Court" if GoDaddy proceeded in this fashion.  (*Id.*)

On February 24-26, 2021, the 30(b)(6) deposition of GoDaddy took place.  (Doc. 261 ¶¶ 6-10.)

On March 5, 2021, SiteLock filed its response to GoDaddy's motion for protective order.  (Doc. 258.)

On March 12, 2021, GoDaddy filed a reply.  (Doc. 260.)

B.    **The Parties' Arguments**

GoDaddy requests "a protective order that prohibits SiteLock from taking a 30(b)(6)

---

[3]    Specifically, SiteLock stated: "We believe certain aspects of GoDaddy's motion can be resolved—and in some cases have already been resolved—without the need for Court intervention.  For example, SiteLock had already agreed to limit the time frame of Topic 16 to April 1, 2013 through July 11, 2016.  SiteLock had also agreed to limit Topics 11(c) and (d) to the 'Reseller Agreement and its addenda.'  And in the interests of compromise, SiteLock will also agree to limit the definition of 'GoDaddy,' 'You,' and 'Your' to exclude 'GoDaddy, Inc.'  We intend to proceed with GoDaddy's depositions this week with these understandings."  (Doc. 258-2 at 67.)

deposition of GoDaddy pursuant to the deficient definitions and topics set forth in the Second Amended Notice." (Doc. 252 at 17.) GoDaddy contends it is entitled to this relief under Rule 26(b)(2) for the following reasons: (1) SiteLock served the second amended notice only 14 days before the Rule 30(b)(6) deposition was scheduled to begin, with knowledge that GoDaddy and GoDaddy's counsel would be tied up with other matters during the intervening period, and thus failed to provide "reasonable notice" (*id.* at 2-5); (2) the new definition of "GoDaddy" is overbroad because it "would sweep in GoDaddy's attorneys and countless unnamed entities and third parties" (*id.* at 5-7); (3) the new definitions of "order," "signup," and "customer" are overbroad, and "directly contradict the positions that SiteLock has taken throughout this case," because they would encompass instances in which a GoDaddy customer received a SiteLock subscription for free (*id.* at 7-9); (4) the new definitions of "subscription," type," and "level" are invalid for the same reasons, and vague to boot (*id.* at 9-10); (5) the new definition of "sale" is improper for the same reasons (*id.* at 10-11); (6) Topics 11(c) and 11(d) are improper because SiteLock did not incorporate, in the second amended notice, the parties' previous agreement that these topics would be limited to the reseller agreement and its addenda (*id.* at 11); (7) Topics 13(j) and 13(k) are overbroad and irrelevant because SiteLock has not limited them to the relevant "temporal scope" (*id.* at 11-12); (8) Topic 16 also has an overbroad temporal scope (*id.* at 12-13); (9) Topics 19, 20(b)-(e), and 21(b)-(c) are improper because they are contention interrogatories designed as deposition topics, call for the production of work product, are overbroad, unduly burdensome, and not reasonably particular, and seek information on topics that the Court previously ruled irrelevant (*id.* at 13-16); and (10) Topic 20 is improper because it lacks reasonable particularity and invades the attorney-client privilege and work-product doctrine (*id.* at 16-17).

SiteLock opposes GoDaddy's motion. (Doc. 258.) As an initial matter, SiteLock argues the motion should be denied because GoDaddy failed to meet and confer before filing it. (*Id.* at 2, 13-14.) Alternatively, SiteLock argues that GoDaddy's complaints lack merit because (1) as for "reasonable notice," the second amended notice was served 14

days before the deposition date, courts have held that 14 days is a presumptively reasonable notice period, the vast majority of the second amended notice was unchanged from the original notice, which was served in November 2020 (more than four months before the deposition), and the few changes had been the subject of discussion during the parties' meet-and-confer sessions (*id.* at 12-13); (2) as for changed definitions, the changes are necessary to capture instances where GoDaddy gave away SiteLock subscriptions for free or included SiteLock subscriptions in bundles (which has long been an issue in this case) and GoDaddy's motion makes clear that GoDaddy understands what the new definitions are calling for (which undermines any complaint based on particularity)  (*id.* at 8-9); (3) as for new topics related to GoDaddy's affirmative defenses, courts have ruled that such questions are permissible in a Rule 30(b)(6) deposition and GoDaddy included similar questions in its Rule 30(b)(6) deposition notice to SiteLock (*id.* at 9-10); (4) as for new topics related to GoDaddy's affirmative claims, SiteLock is willing to withdraw those questions now that GoDaddy has confirmed it won't be pursuing those claims (*id.* at 14); (5) as for new topics related to document retention policies, GoDaddy's particularity challenge fails because GoDaddy included a nearly identical question in its Rule 30(b)(6) notice to SiteLock (*id.* at 10 n.5); and (6) as for temporal limits, GoDaddy's post-June 2018 revenues from Sucuri are relevant in calculating the future value of SiteLock's damages arising from the "failure to promote" claim (*id.* at 10-11).  Finally, SiteLock asserts that GoDaddy's Rule 30(b)(6) witnesses were not prepared to testify on all of the noticed topics during their depositions (*id.* at 7) and thus makes an affirmative request for the Court to order them to "reappear" at a future deposition (*id.* at 11-12).

In reply (Doc. 260), GoDaddy argues that it engaged in sufficient meet-and-confer efforts before seeking relief (*id.* at 10-11), provides further argument concerning the merits of some of its original objections (*id.* at 2-3, 7-10), disputes SiteLock's assertion that its witnesses were unprepared (*id.* at 1, 3-6), and objects to SiteLock's affirmative request to reopen the deposition, characterizing it as an untimely "attempt to hijack GoDaddy's motion to argue an impromptu motion to compel" (*id.* at 1, 3-4).

1    C.    **Analysis**

2        What a mess.  Each side's affirmative requests for relief are denied.

3        As for GoDaddy, its specific request for relief—the issuance of a protective order

4    to prohibit SiteLock from pursuing a Rule 30(b)(6) deposition based on the second

5    amended deposition notice—is moot.  Although GoDaddy filed its motion on February 19,

6    2021, five days before the deposition was scheduled to begin, it didn't request expedited

7    consideration of its motion.  (Doc. 12 at 4 [Court's preliminary order: "Any party desiring

8    expedited consideration of a motion or other matter pending before the Court may make

9    such a request by filing a separate *Notice for Expedited Consideration*.  This notice should

10   set forth the grounds warranting accelerated resolution and identify the dates of the

11   imminent events pertinent to the request."].)  Nor did GoDaddy seek a stay of the

12   deposition pending the resolution of its motion.  As a result, the deposition proceeded as

13   scheduled.  GoDaddy does not explain how the issuance of a protective order now, more

14   than a month after the deposition ended, would accomplish anything.  *See generally Pioche*

15   *Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) ("[The prior version of

16   Rule 26(b)] places the burden on the proposed deponent to get an order, not just to make a

17   motion.  And if there is not time to have his motion heard, the least that he can be expected

18   to do is to get an order postponing the time of the deposition until his motion can be

19   heard."); *Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maintenance*

20   *Ass'n*, 316 F.R.D. 327, 336 (D. Nev. 2016) (party seeking protective order in relation to

21   deposition must "obtain[] either a protective order or an order staying the deposition

22   pending resolution of the motion for protective order").  This renders the motion moot.[4]

23   
_____

24   [4]      *See, e.g., Murphy v. Perez*, 2007 WL 1500841, *1 (N.D. Cal. 2007) ("On February
     20, 2007, Plaintiff filed an emergency motion for a protecti[ve] order, requesting that the
25   Court protect his witness inmate Darrell Wright from being deposed by Defendant's
     counsel on February 20, 2007 . . . .  Because the deposition of inmate witness Wright took
26   place on February 20, 2007, Plaintiff's motion for a protective order . . . is DENIED as
     moot."); *Fletcher v. Brown County*, 2007 WL 3124540, *3 (D. Neb. 2007) ("Nebraska
27   Health and Human Services' motion for protective order . . . is denied as moot.  It appears
     that Ms. Anderson's deposition occurred."); *Calgene, Inc. v. Enzo Biochem, Inc.*, 1993 WL
28   645999, *12 (E.D. Cal. 1993) ("In its motion for protective order defendant sought to
     prevent the deposition of Dr. Masayori Inouye . . . .  [S]ince the deposition was scheduled
     to take place on September 16, 1993, and has presumably occurred, the issue of whether

GoDaddy's motion is also denied for the separate reason that GoDaddy failed to meet and confer in good faith with SiteLock before seeking judicial intervention.  Under LRCiv 7.2(j), "[n]o discovery motion will be considered or decided unless a statement of moving counsel is attached thereto certifying that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter.  Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions."  Here, the relevant chronology is that GoDaddy received SiteLock's original deposition notice in November 2020, then spent the next few months actively negotiating with SiteLock over tweaks and limitations to the 19 proposed topics.  By late January 2021, the parties were largely in agreement.  Finally, on February 10, 2021, SiteLock served its second amended notice, which sought to change the definitions of some of the defined terms and to add a handful of new topics.  In a cover email, SiteLock explained why it was making these changes and noted that some of the changes were simply meant to memorialize the parties' previous discussions.

What happened next?  GoDaddy took no action for eight days, then wrote a letter to SiteLock on February 18, 2021 that unilaterally set a one-day deadline for SiteLock to eliminate all of the changes reflected in the second amended notice, and then filed its motion for a protective order immediately after SiteLock failed to meet this unilateral deadline.  It is difficult to understand how this could be considered "personal consultation" and a "sincere effort" to resolve the parties' dispute over the permissibility of the changes at issue.  Although it is true, as GoDaddy's counsel states in her certificate of conferral, that "[t]he parties exchanged extensive written correspondence regarding SiteLock's Rule 30(b)(6) notices" (Doc. 254 at 2), that correspondence related to how to modify the wording of SiteLock's *original* notice.  GoDaddy's motion for protective order, however, focuses primarily on the changes that SiteLock sought to make in the *second amended* notice.  There was no personal, sincere attempt to meet and confer about those changes—

the Magistrate Judge erred in denying defendant's request for a protective order is moot.").

a letter with a 24-hour deadline, unaccompanied by a phone call, doesn't cut it.

This leaves SiteLock's affirmative request for relief.  SiteLock asserts that GoDaddy's witnesses were unprepared to discuss certain topics during the deposition and thus argues that "GoDaddy's 30(b)(6) witnesses should be ordered to reappear." (Doc. 258 at 11, capitalization omitted.)  This request fails for three related but distinct reasons.  First, "[a] request for a court order must be made by motion." *See* Fed. R. Civ. P. 7(b)(1).  As a result, "a request for affirmative relief is not proper when raised for the first time in an opposition." *Smith v. Premiere Valet Servs., Inc.*, 2020 WL 7034346, *14 (C.D. Cal. 2020).  Second, in addition to being raised in a procedurally improper way, SiteLock's request is untimely.  The deposition concluded on February 26, 2021.  That was the final day of the fact discovery period.  Under the scheduling order in this case, "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery . . . .  Delay in presenting discovery disputes for resolution is not a basis for extending discovery deadlines."  (Doc. 22 at 5.)  Thus, if SiteLock felt that GoDaddy's answers during the Rule 30(b)(6) deposition were deficient for some reason, it was incumbent on SiteLock to raise the issue immediately.  Instead, SiteLock waited a week and then tucked its request for relief—which is effectively a request to extend the fact discovery period—into a response brief.  This approach did not comply with the scheduling order.  Third, and finally, largely because it chose to raise its request for relief in a somewhat offhand manner in a response brief, SiteLock failed to develop an adequate record demonstrating that the answers of GoDaddy's witnesses during the deposition were, in fact, deficient.

II.     SiteLock's Motion To Compel

        A.     **Background**

        The other pending discovery motion is a request by SiteLock to compel GoDaddy to produce certain financial records and update certain interrogatory responses.  Because this request is intertwined with a previous discovery dispute, which was resolved in January 2021 (Doc. 248), it is helpful to begin there.

The essential facts of this case are that "SiteLock and GoDaddy entered into a contract under which GoDaddy agreed to market and sell SiteLock's website security services.  When a GoDaddy customer would purchase a SiteLock subscription and then take the additional step of activating that subscription, GoDaddy would remit a portion of the sale proceeds to SiteLock.  When a GoDaddy customer would purchase a SiteLock subscription but then fail to activate it, GoDaddy would not remit any of the sale proceeds to SiteLock.  One of the disputed issues in this case is whether GoDaddy was required by the parties' contract to remit payment to SiteLock in this latter circumstance—SiteLock says yes, GoDaddy says no."  (*Id.* at 4.)

During the discovery process, SiteLock propounded various requests to GoDaddy seeking "information that was related, in one way or another, to the total number of times GoDaddy sold a SiteLock subscription."  (*Id.*)  Eventually, in August 2020, "GoDaddy produced a 7,156-page PDF document that purports to summarize, on a transaction-level basis, GoDaddy's sales of SiteLock's subscriptions."  (*Id.* at 5.)

In October 2020, SiteLock filed a motion to compel GoDaddy to produce additional records on this topic.  (*Id.* at 6 [discussing Doc. 181].)  SiteLock argued it had reason to believe, based on discrepancies in other records provided by GoDaddy, that GoDaddy's summary charts were underinclusive, that it shouldn't have to accept the summary charts given this uncertainty, and that it was entitled to the underlying business records on which the charts were purportedly based.  (*Id.*)  SiteLock then identified four specific categories of business records that GoDaddy should be required to produce.  (*Id.*)

GoDaddy opposed the motion by, *inter alia*, defending the accuracy of its summary charts and arguing that the alleged discrepancies could be explained by the fact that it "routinely gave away SiteLock subscriptions to its customers for free (meaning that, in cases where the customer subsequently activated the subscription, SiteLock would receive payment even though there was no original sale)."  (*Id.* at 6-7.)  In an accompanying declaration, GoDaddy's counsel explained that "[d]ocuments created contemporaneously with GoDaddy's migration of customers off of the SiteLock platform . . . show that at least

165 GoDaddy product offerings . . . had at some point included a *free* SiteLock product." (Doc. 193 ¶ 10.)  Counsel summarized these instances of product bundling in a chart and stated that the chart was based on "contemporaneously-created documents" and "hits from the transaction receipts."  (*Id.*)  GoDaddy also submitted a declaration from Michael Althoff ("Althoff"), its senior director of finance, who avowed that GoDaddy had already "produced the most granular transaction data available for customer transaction-related financial records of SiteLock products made by GoDaddy and its reseller partners" and thus "even if GoDaddy was compelled to produce customer transaction-related financial records of SiteLock products, it could not do so because no additional records occurred." (Doc. 191 ¶ 3.)

In reply, SiteLock argued that GoDaddy's admission that it hadn't included "free" subscriptions in its summary charts was damning because those subscriptions weren't really free and should have been included.  (Doc. 248 at 7.)

On January 6, 2021, the Court issued an order granting SiteLock's motion to compel in part.  (*Id.* at 9-11.)  On the one hand, the Court held that SiteLock was entitled to documents showing the total number of times that GoDaddy included a SiteLock subscription in a bundle of products because one of SiteLock's discovery requests encompassed "information about each SiteLock subscription 'that was ordered, purchased *or otherwise acquired* from or through GoDaddy or any of GoDaddy's platforms.'"  (*Id.* at 9-10, citation omitted.)  The Court also expressed skepticism toward GoDaddy's avowal that its summary charts were comprehensive, noting that (1) "this avowal is difficult to square with GoDaddy's apparent acknowledgement, in a different declaration, that information associated with 36,486 'unique common names' was omitted from its disclosures" and (2) "it is not readily apparent from the parties' submissions whether GoDaddy ever sold SiteLock subscriptions as part of a package of products (as opposed to giving away SiteLock subscriptions for free) and if so, whether those transactions were included in the summary documents."  (*Id.* at 10.)  On the other hand, the Court stated that it was "not convinced that the appropriate way to remedy these potential shortcomings is

to order GoDaddy to produce" the four specific categories of documents sought by SiteLock because "GoDaddy is in the best position to understand its internal recordkeeping systems and has avowed, through the declaration of M. Althoff, that such steps would be fruitless." (*Id.*)  Thus, subject to exceptions not applicable here, the Court concluded that "SiteLock may pursue its concerns over the comprehensiveness of GoDaddy's summary documents by deposing GoDaddy's Rule 30(b)(6) representative." (*Id.* at 11.)

On January 22, 2021, SiteLock took the deposition of Althoff in his personal capacity.  During this deposition, Althoff acknowledged that GoDaddy's summary charts do not include transactions in which a customer purchased a bundle of products that included a "free" SiteLock subscription. (Doc. 257-1 at 68.)  Althoff further acknowledged that the classification of a SiteLock subscription as a "free" component of a bundle was "subjective."   (*Id.* at 92-93.)   Finally, Althoff acknowledged that records of such transactions are contained in GoDaddy's financial record system but clarified that the financial record would only reflect the sale of the "primary product." (*Id.* at 95; Doc. 272-1 at 15.)

On February 12, 2021, SiteLock wrote a letter to GoDaddy "to request that GoDaddy immediately produce all transaction records concerning its sales of bundles that included SiteLock subscriptions (including 'free' subscriptions)." (Doc. 255-3 at 1.)  This letter stated that "[t]he recent testimony of . . . Althoff (as well as GoDaddy's recent production of receipts) have demonstrated beyond doubt that GoDaddy maintains relevant records regarding these bundled transactions that GoDaddy has not produced." (*Id.*)

On February 19, 2021, GoDaddy wrote a response letter. (*Id.* at 14-24.)  Although the single-spaced letter is 10 pages long, GoDaddy's essential argument was that it had no obligation to produce the records in question because "SiteLock has specifically excluded this category of documents from the bounds of relevance." (*Id.* at 16.)

On February 24-26, 2021, as discussed above, GoDaddy's Rule 30(b)(6) deposition took place.  Althoff served as one of GoDaddy's Rule 30(b)(6) representatives.  During his testimony in this capacity, Althoff acknowledged that the summary charts GoDaddy had

produced during discovery did not include instances where a SiteLock subscription was bundled, for "free," with another GoDaddy product offering.  (*Id.* at 10-11.)

On February 26, 2021, SiteLock met and conferred with GoDaddy concerning SiteLock's request for more information regarding these bundled transactions.  (Doc. 255-2 ¶ 17.)  During this session, "GoDaddy's counsel took the position that sales of product bundles that included SiteLock subscriptions were 'irrelevant' to SiteLock's claims.  GoDaddy's counsel also asserted that it would take 'weeks' to produce records concerning these transactions."  (*Id.*)

On February 27, 2021, SiteLock filed the pending motion to compel.  (Doc. 255.)

On March 15, 2021, GoDaddy filed a response.  (Doc. 268.)

On March 22, 2021, SiteLock filed a reply.  (Doc. 279.)

### B.     The Parties' Arguments

SiteLock "moves to compel [GoDaddy] to produce records showing GoDaddy's sales of all product bundles that included SiteLock subscriptions."  (Doc. 255 at 1.) SiteLock contends these records are relevant to its claim for damages, which "encompass[es] all SiteLock orders that GoDaddy did not report or pay for, including orders of product bundles that included SiteLock," and are responsive to at least some of its requests for production.  (*Id.* at 11-14.)  SiteLock acknowledges that its previous request to compel the production of related records was denied in January 2021 but argues the denial was predicated on GoDaddy's avowal that the records weren't readily available (and, thus, the concept of bundled sales could only be explored through witness testimony during a Rule 30(b)(6) deposition).  (*Id.* at 1-3, 6-7.)  SiteLock contends this premise is no longer valid because Althoff and other GoDaddy witnesses subsequently admitted, during depositions, that the records at issue *do* exist and would be simple to gather and produce.  (*Id.* at 7-11, 14.)

GoDaddy opposes SiteLock's motion.  (Doc. 268.)  As an initial matter, GoDaddy argues the motion should be denied because it is an "ill-disguised" request for reconsideration of the January 2021 order yet makes no effort to satisfy the procedural and

substantive requirements applicable to motions for reconsideration.  (*Id.* at 1, 3-11.)  Alternatively, GoDaddy argues that, even if SiteLock's motion is treated as a motion to compel, it should be denied because (1) it was filed after the close of fact discovery and is thus untimely under the scheduling order (*id.* at 11-13); and (2) "GoDaddy has no more responsive documents to produce" and SiteLock's arguments to the contrary are based on mischaracterizations of Althoff's and the other GoDaddy witnesses' deposition testimony (*id.* at 13-14).  Finally, GoDaddy contends that SiteLock failed to properly authenticate or otherwise lay a foundation for the evidence attached to its motion (*id.* at 14-16) and that many of the factual assertions in SiteLock's motion are unsupported (*id.* at 16-17).

In reply, SiteLock argues that its motion is not properly characterized as a motion for reconsideration because it is not arguing that the January 2021 order is wrong and is seeking "relief that differs substantially from the relief sought by its [previous] motion." (Doc. 279 at 7-9.)  SiteLock also contends that its motion is not untimely because it took great pains to get the motion on file "roughly 12 hours after GoDaddy's last 30(b)(6) deposition and the parties' meet-and-confer conference regarding this motion."  (*Id.* at 9-11.)  On the merits, SiteLock contends it is entitled to relief because, despite GoDaddy's "attempts to muddy the waters" and "procedural gamesmanship," GoDaddy fundamentally "does not dispute the most salient points in SiteLock's Motion to Compel.  GoDaddy admits that it maintains—but has not produced—transaction records concerning GoDaddy's sales of products that 'included' a SiteLock subscription as a 'feature' of the product (what GoDaddy incorrectly calls 'free' SiteLock subscriptions)."  (*Id.* at 1.)

C.     **Legal Standard**

Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the non-moving party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."

Rule 26(b), in turn, defines the "Scope and Limits" of discovery.  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[5]   Under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable."

As for the burden of proof, "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co.*, 2015 WL 4307800, *1 (D. Ariz. 2015).  This "is a relatively low bar." *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020). *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, at 801-02 (2021) ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . .  [C]ourts are quick to point out that discovery is concerned with relevant information—not relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance.") (footnotes and internal quotation marks omitted).  If the movant meets its burden of establishing relevancy, "the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Doe*, 2015 WL 4307800 at *1.

…

---

[5]     The current version of Rule 26(b)(1) was enacted in 2015.  An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must [now] be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020).  *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

D.   **Analysis**

As an initial matter, GoDaddy's attempt to recharacterize SiteLock's motion to compel as a motion for reconsideration of the January 2021 order is misplaced.  Although SiteLock's earlier motion and the current motion both touch upon the same general subject matter—the discoverability of records related to bundled product sales—they seek different relief.  The last motion sought to compel the production of four specific categories of documents: "(1) contemporaneous transaction-level accounting records showing all of GoDaddy's sales of SiteLock subscriptions, (2) spreadsheets created by [GoDaddy employee] Lily Liang showing SiteLock's sales (and the data underlying them), (3) other internal reports, presentations, or communications showing GoDaddy's sales, and (4) customer receipts and invoices for all of GoDaddy's sales of SiteLock subscriptions." (Doc. 248 at 6.)  The current motion, in contrast, asks that GoDaddy be ordered to update its summary charts—which are responsive not only to SiteLock's previous requests for production, but also to SiteLock's Interrogatory No. 5[6]—to include the bundled transactions at issue and to produce records associated with those particular transactions.

SiteLock's motion is also timely.  In the January 2021 order, the Court stated that SiteLock should be able to obtain more information about bundled transactions through GoDaddy's upcoming depositions.  Sure enough, during a deposition later that month, Althoff acknowledged that GoDaddy's summary charts don't include the bundled transactions at issue and suggested that records of those transactions (albeit without details as to the contents of the bundles) exist in GoDaddy's financial record system.  Afterward,

---

[6]     Interrogatory No. 5 provides as follows: "Describe all SiteLock services, products, or subscriptions that were ordered, purchased or otherwise acquired from or through GoDaddy or any of GoDaddy's platforms (including renewals), including (1) the type and level of product, service, or subscription (e.g., 'SiteLock Scan Basic'), (2) the date of each such order, purchase, or acquisition, (3) all amounts charged in connection with each such order, purchase, or acquisition; (4) all amounts paid to any person (including but not limited to GoDaddy, SiteLock, or any Customer) in connection with each such order, purchase, or acquisition (including any refunds), (5) the date(s) of any activation of that product, service, or subscription, if any, and any amounts paid to any person in connection with each such activation, and (6) the date(s) of any cancellation of that product, service, or subscription, if any, and any amounts paid to any person in connection with each such cancellation."  (Doc. 181-2 ¶ 24.)

SiteLock wrote a letter to GoDaddy asking for the records that Althoff had mentioned during his deposition, but GoDaddy denied this request in a letter dated February 19, 2021. This was one week before the fact discovery cutoff of February 26, 2021. The following week, GoDaddy's Rule 30(b)(6) deposition took place, and it included more statements suggesting that the records and transactions sought by SiteLock were discoverable. Immediately after the deposition ended, SiteLock met and conferred with GoDaddy in another attempt to obtain this information, only to be denied once again. SiteLock then scrambled to get its motion to compel on file but was unable to do so by midnight on the 26th (*i.e.,* the fact discovery cutoff), ultimately filing it around 2:00 am on February 27. Although it is true, as discussed in Part I above, that the scheduling order in this case provides that "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery" (Doc. 22 at 5), the Court has no trouble concluding that SiteLock's efforts to explore this issue through the meet-and-confer process and then present it for judicial resolution were timely and diligent.

On the merits, SiteLock is entitled to the materials in question. SiteLock's RFP 21 seeks information about each SiteLock subscription "that was ordered, purchased *or otherwise acquired* from or through GoDaddy or any of GoDaddy's platforms." Similarly, SiteLock's Interrogatory No. 5 seeks information about "all SiteLock services, products, or subscriptions that were ordered, purchased *or otherwise acquired* from or through GoDaddy or any of GoDaddy's platforms." The italicized language in each discovery request is broad enough to encompass instances in which GoDaddy included a SiteLock subscription in a bundle of products, irrespective of whether GoDaddy believed it was imposing a distinct charge for the SiteLock component of the bundle. Whether SiteLock is actually entitled to damages for such transactions is not before the Court at this time— the requested information is within the bounds of discoverability.

Finally, although GoDaddy made statements and submitted evidence during the previous motion-to-compel process that suggested it lacked the ability to identify these transactions or locate and produce the transactional records associated with them, the recent

deposition testimony tells a different story.  The Court acknowledges that the process of identifying and producing this information may not be easy.[7]  Nevertheless, the bottom line is that GoDaddy has the capability to locate and produce additional, responsive information.  To its credit, GoDaddy acknowledged such capability during oral argument and stated that, with a few tweaks and some additional time, it could make a supplemental production.  This seems like a sensible solution that balances SiteLock's legitimate need for the underlying information with the practical difficulties of locating and producing it.

Accordingly, SiteLock's motion to compel is granted.  GoDaddy must, within four weeks of the date of this order, do the following: (1) supplement its response to SiteLock's Interrogatory No. 5 by producing a chart that reflects the additional transactions in which a SiteLock service, product, or subscription was otherwise acquired (but this chart need not include all of the fields called for by Interrogatory No. 5, to the extent some fields may be inapplicable); and (2) produce the records associated with those additional transactions.

### E.    **Costs**

Rule 37(a)(5)(A) provides that when a motion to compel is granted, the court "must" require "the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless (1) the motion was "premature," (2) the non-movant's conduct was "substantially justified," or (3) "other circumstances make an award of expenses unjust."

Although the Court was tentatively inclined, before oral argument, to enter a cost-shifting award in SiteLock's favor, the Court has reevaluated this issue with the benefit of oral argument and now concludes that cost-shifting would be inappropriate here.  Even though SiteLock has essentially prevailed on its request to compel the production of additional information, the Court now appreciates that GoDaddy's position was substantially justified.

---

[7]    The Court's statements to the contrary in the tentative order were based on a misapprehension of Althoff's deposition testimony, which the Court now more fully understands with the benefit of GoDaddy's explanations during oral argument.

III.   <u>GoDaddy's Motions To Seal</u>

Also pending before the Court are GoDaddy's five motions to seal: (1) a motion to seal portions of Exhibits E, F, and H[8] to its reply in support of its motion for protective order (Doc. 262); (2) a motion to seal portions of SiteLock's motion to compel, Exhibits 1, 2, 3, 4, 7, 11, 12, and 13 thereto in their entirety, and portions of Exhibits 5, 6, and 9 thereto (Doc. 265); (3) a motion to seal portions of GoDaddy's response to SiteLock's motion to compel and Exhibits A, B, and C thereto in their entirety (Doc. 270); (4) a motion to seal portions of Exhibit 11 to SiteLock's response to GoDaddy's motion for protective order (Doc. 274); and (5) a motion to seal portions of SiteLock's reply in support of its motion to compel (Doc. 284).

A.   **Background**

The Court is once again bogged down by the "tedious, time-consuming" task of reviewing motions to seal huge quantities of material due to GoDaddy's "failure to carefully consider whether each proposed redaction"—or request to seal a document in full—"was, in fact, necessary."  (Doc. 103 at 3.)  The parties have repeatedly been admonished that any sealing request must explain "with specificity" why the material in question meets the standard for sealing.  (*Id.* at 3; Doc. 227 at 2.)

Furthermore, the Court has repeatedly ordered that any sealing request seeking redactions be accompanied by a version, lodged under seal, in which each proposed redaction is *highlighted* to facilitate the Court's review and to obviate the need for side-by-side comparison of drafts to determine what material has been redacted.  (Doc. 100 ["IT IS ORDERED that GoDaddy shall lodge under seal an unredacted version of all materials sought to be sealed, with any material sought to be sealed or redacted highlighted to facilitate the Court's review of the pending stipulation to seal"]; Doc. 129 at 1 ["SiteLock is reminded that, in the future, it must provide an unredacted version of all materials sought

---

[8]   GoDaddy indicated Exhibit "G" in the motion (Doc. 262), but it appears this designation was in error, as the memorandum in support of the motion refers instead to Exhibit H.  (Doc. 263 at 5.)

to be sealed, with any material sought to be redacted highlighted to facilitate the Court's review of the motion to seal."]; Doc. 227 at 2 n.2 ["[T]here is no highlighting in the document lodged under seal . . . to indicate proposed redaction, as the Court has repeatedly ordered."]; *id.* at 3-4 ["IT IS FURTHER ORDERED that if the parties file any additional motions to seal for the duration of this action . . . the document lodged under seal must include highlighting of any portions the parties seek to redact."]).

B. **Legal Standard**

The public has a general right to inspect judicial records and documents, such that a party seeking to seal a judicial record must overcome "a strong presumption in favor of access." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). To do so, the party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ." *Id.* at 1178-79 (internal quotation marks and citations omitted). The Court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (internal quotation marks omitted). "After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (internal quotation marks omitted).

The "stringent" compelling reasons standard applies to all filed motions and their attachments where the motion is "more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096, 1101 (9th Cir. 2016). However, a lower standard applies to "sealed materials attached to a discovery motion unrelated to the merits of a case," which requires only that a party establish "good cause" for sealing. *Id.* at 1097.

GoDaddy's motion for a protective order (Doc. 251) and SiteLock's motion to compel (Doc. 255) are more than tangentially related to the merits of this case—they involve matters that go to the heart of this litigation. Indeed, one of the sentences that

GoDaddy seeks to redact from SiteLock's motion to compel—a sentence that clearly doesn't meet the sealing standard and will not be redacted—states that "GoDaddy's unproduced records of its sales of product bundles that included SiteLock," which is the topic of most of the material sought to be sealed, "are central to SiteLock's claims." (Doc. 257 at 2.)  For these reasons, the Court concludes that the stringent "compelling reasons" standard likely applies here.  With that said, the determination of the applicable standard is ultimately irrelevant because GoDaddy's sealing requests would fail even if evaluated under the lesser "good cause" standard.

### C.  The Motions

GoDaddy's motions fail to follow the Court's repeated instructions and fail to establish that the standard for sealing is satisfied.

#### 1.  Doc. 262

GoDaddy's motion to seal portions of Exhibits E, F, and H to its reply in support of its motion for protective order (Doc. 262) is accompanied by unredacted versions of these documents, lodged under seal, without the required, court-ordered highlighting.  (Doc. 264, 264-1, 264-2.)  The motion identifies sixteen large blocks of proposed redactions: pages 44-53, 53-55, 59-64, and 66-75 from Exhibit E, pages 18-31, 24-26, 32-42, 61-65, 66-68, 103-105, 105-111, 112-114, 120-123, 141-143, and 146-15 [*sic*] from Exhibit F, and page 102 from Exhibit H.  (Doc. 262-1 at 2.)  Exhibit E is an excerpt from the deposition of Lily Liang (Doc. 264), Exhibit F is an excerpt from the Althoff deposition (Doc. 264-1), and Exhibit H is an excerpt from the deposition of Keith Tice (Doc. 264-2).

GoDaddy devotes one paragraph (17 lines of text) of its memorandum to making sweeping generalizations about 28 pages of proposed redactions to Liang's deposition testimony.  GoDaddy broadly asserts that the proposed redactions cover "sensitive business matters, including GoDaddy's internal proprietary technology and processes and the internal terminology used to describe same" as well as "commercially sensitive information regarding GoDaddy's strategic approach to marketing and advertising certain products, including both SiteLock and other (non-party) products, and the related product costs."

(Doc. 263 at 3-4.)  GoDaddy further asserts that, buried somewhere within the 28 pages of proposed redactions, there are "references to (a) a "CONFIDENTIAL" email chain regarding SiteLock sales revenue (Ex. 195, GD_001019- 001020); and (b) a document this Court previously approved as being filed under seal, see Dkt. No. 193-1, Ex. C (listing GoDaddy product offerings)."  (*Id.*)  This is a far cry from the Court's repeated direction that redaction requests should, "with specificity," identify what is sensitive about each "particular sentence or phrase" to be redacted.  (Doc. 227 at 2.)  Instead, GoDaddy places the onus on the Court to review large sections of a deposition transcript to determine whether they are subject to sealing in full.

Similarly, GoDaddy devotes one paragraph of its memorandum to making sweeping generalizations about over 56 pages[9] of proposed redactions to Althoff's deposition testimony.  Most of the paragraph is copied from the preceding paragraph, with a few changes—the "sensitive business matters" here are "GoDaddy's billing practices, internal accounting systems, and sales data."  (*Id.* at 4-5.)

As for Exhibit H, GoDaddy seeks to redact one page of Tice's deposition transcript, and the reason offered is that "[t]he information contained therein is highly sensitive business information regarding the terms of a third-party agreement between SiteLock and a non-party, disclosure of which would result in competitive harm in the marketplace."  (*Id.* at 5.)

### 2.   Doc. 265

SiteLock filed a redacted version of its motion to compel (Doc. 255) on the public docket and lodged an unredacted version under seal (Doc. 257).  SiteLock also filed a notice (Doc. 256) indicating its belief that various enumerated documents, or portions thereof, contain "confidential and commercially sensitive material," as do the redactions in its motion to compel, and lodged under seal those documents and the unredacted version of the motion to compel (Docs. 257; 257-1).  The documents lodged under seal do not

---

[9]   The page range "146-15" makes no sense, so the Court excluded this range from its page count.

contain highlighting to indicate what material has been redacted.  Furthermore, the various documents were "lumped together," not "lodged as separate attachments," contravening the Court's December 3, 2020 order.  (Doc. 227 at 4.)  The materials lodged under seal total 149 pages.  (Docs. 257; 257-1.)

GoDaddy filed a motion to seal the documents identified in SiteLock's notice.  (Doc. 265.)  GoDaddy asserts that "SiteLock's Motion to Compel contains material that is commercially sensitive to GoDaddy," including "detailed discussions about GoDaddy's strategic decisions regarding certain product offerings" and descriptions of sensitive deposition testimony.  Rather than providing a draft with the redactions highlighted, GoDaddy provided this list of proposed redactions: 1:18-19; 1:23- 28; 2:1-2; 2:5-9; 2:20; 2:27-28; 3:1; 3:11-12; 4:24-28; 6:26-28; 7:1-5; 7:26-28; 8:1-8; 8:16-28; 9:1-3; 9:5-6; 9:13-28; 10:1-28; 11:1; 11:7-8; 12:26-27; and 14:8-17.  The Court, having been forced to undertake a side-by-side comparison to determine what has been redacted (because the parties ignored the Court's order to provide highlighted drafts), was surprised to discover that the first proposed redaction clearly does not meet the sealing standard—it simply states that GoDaddy "maintains and could easily produce records" concerning the product bundles at issue.  (Doc. 257 at 1:18-19.)  The rest of the proposed redactions on the first page of the motion follow suit.  On the second page, one of the proposed redactions is merely the phrase "these important records."  (*Id.* at 2:20.)  Sending the Court on a wild goose chase through obviously innocuous redacted text to see if maybe a few of the dozens of proposed redactions might actually meet the sealing standard is unacceptable.

As for Exhibits 1, 2, 3, 4, 11, and 12, these are sections of deposition transcripts (Liang, Exhibits 1-2; Althoff, Exhibits 3-4; Wayne Thayer, Exhibit 11; Jennifer Racki, Exhibit 12) that do not meet the standard for sealing.  It is possible there might be some sensitive information in some of them that could be the subject of narrow redactions, but it is not the Court's role to cull through them in an attempt to isolate these sections—that is what GoDaddy should have done, has been repeatedly instructed to do, but did not do.

As for Exhibits 5, 6 and 9, if they were lodged under seal in their unredacted form

somewhere (with or without the required highlighting), the Court was unable to find them. Thus, the Court has no way of knowing what the redacted material says and whether it is subject to sealing.

Exhibits 7 and 13 are brief emails that meet the sealing standard—but they've been impermissibly lumped into one attachment with the remainder of the exhibits, such that the Clerk of Court cannot easily file some of the exhibits, but not others, under seal. SiteLock having lodged the exhibits incorrectly, in was incumbent upon GoDaddy, as the proponent of the motion to seal, to do it correctly.

### 3.   Doc. 270

GoDaddy has redacted portions of its response to SiteLock's motion to compel, but the Court's side-by-side review (necessitated, once again, by the lack of required highlighting) leaves the Court wondering what could possibly justify the proposed redactions. For example, one paragraph in the response contains this sentence, viewable by the public: "Mr. Althoff also explained that the free product given away is not tracked because the free product giveaway has no value." (Doc. 268 at 14.) The Court struggles to understand how, given that this affirmative statement has been made publicly, the quotations from the record supporting this statement could be subject to sealing. Again, the motion to seal and memorandum in support thereof fail to explain why each proposed redaction is necessary, instead relying on sweeping generalizations. Again, this will not suffice.

GoDaddy also seeks to file Exhibits A, B, and C under seal in their entirety. These are excerpts of deposition transcripts (Althoff, A-B, Liang, C), and, as discussed above, they do not meet the standard for sealing in their entirety.

### 4.   Doc. 274

SiteLock lodged under seal Exhibits 10, 11, and 12 to its response to GoDaddy's motion for protective order. (Docs. 258, 259.) No party filed a motion seeking permission to file Exhibits 10 or 12 under seal, and GoDaddy indicated that its confidentiality designation is withdrawn. (Doc. 275 at 1.) Thus, no party contests that Exhibit 10 (Doc.

259-1) and Exhibit 12 (Doc. 259-3) should be filed in the public record.  GoDaddy seeks the redaction of Exhibit 11, lines 8:25-9:6; 34:5-7; 35:14-16; 35:21-36:1; 36:3-4; 36:13-15; 36:19-24; 37:11-15; 57:2-8; 57:12-58:7; 58:10-13; 58:17-22; 59:1-7; 59:10-13; 59:21-23; 60:1-6; 60:10- 15; and 60:19-25.

Exhibit 11 is an excerpt of Althoff's deposition.  The paragraph of GoDaddy's memorandum offering generalized reasons for this litany of proposed redactions to Exhibit 11 is insufficient.

5.   Doc. 284

Finally, GoDaddy filed a motion to seal portions of SiteLock's reply in support of its motion to compel.  (Doc. 284.)  Most of the proposed redactions do not appear sensitive, and indeed appear to go to the heart of this discovery dispute and the case at large, and GoDaddy has again failed to identify, with any specificity, why these redactions meet the sealing standard.

D.   **Conclusion**

The parties' excessive sealing requests have placed an undue burden on the Court's time and resources.  The Court has been asked repeatedly "to decide a sometimes complex issue of sealing or redaction with no adversarial briefing and often, as in this case, with only a perfunctory submission from the party seeking relief."  (Doc. 103 at 3-4.) Additionally, court orders designed to streamline the sealing process have been inexplicably ignored.  The unacceptably vague sealing requests, along with the parties' seemingly endless discovery requests, have bogged down this case.  The Court is mindful of the public's interest in the expeditious resolution of lawsuits and of its inherent power and duty to control its own docket.  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).  The Court is authorized to "manage cases so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated" and to adopt "special procedures for managing potentially difficult or protracted actions."  *Id.*

Generally, when a motion to seal is denied, "the lodged document will not be filed"

and the submitting party "may" resubmit the document for filing in the public record. LRCiv 5.6(e). Where the proponent of the motion to seal is also the party that wished to file the document, the Court has often given that party the option to (1) file the document in the public record, (2) make another attempt at an adequate motion to seal, or (3) withdraw the document and revise whatever brief had relied upon that document to omit the relevant citations.

But here, the substandard motions to seal and the extensive amount of proposed redactions, many of which common sense indicates are not subject to sealing, threaten to create untenable further delay in this action. The Court will not permit a new round of motions to seal, which would postpone resolution of the discovery disputes. Instead, all of the materials submitted by both parties will be filed in the public record, with the exception of Exhibit H to GoDaddy's reply in support of its motion for protective order (Doc. 264-2) and Exhibits 7 and 13 of SiteLock's motion to compel (Doc. 257-1 at 98-99; *id.* at 127-29), which may be filed under seal. *See, e.g., GoDaddy.com LLC v. RPost Comms. Ltd.*, 2016 WL 1158851, *4, *7 (D. Ariz. 2016) (denying certain sealing requests by GoDaddy, noting that "GoDaddy's explanations for sealing [were] generalized in nature . . . and lack[ed] substantiation," and ordering the clerk of court to "unseal and file" the lodged documents in lieu of allowing another round of sealing requests); *Ruiz v. N.J. Dep't of Corrections*, 2020 WL 2111013, *10-11 (D.N.J. 2020) (denying motions to seal, where the parties failed to comply with the court's procedural requirements related to sealing requests, the parties' proffered justifications for sealing were unpersuasive, and the materials to be sealed "contain[] information that would be disclosed at trial," and ordering the clerk of court to "lift the seals currently on the docket" in lieu of allowing the parties to file another round of sealing requests).

…

…

…

…

- 26 -

1     Accordingly,

2     **IT IS ORDERED** that:

3     (1)   GoDaddy's motion for protective order (Doc. 251) is **denied**.

4     (2)   SiteLock's motion to compel (Doc. 255) is **granted**.

5     (3)   GoDaddy's first motion to seal (Doc. 262) is **granted in part and denied in part**.

6          The Clerk of Court shall file in the public record Exhibits E and F (Docs. 264,

7          264-1), and shall file under seal Exhibit H (Doc. 264-2).

8     (4)   GoDaddy's second motion to seal (Doc. 265) is **granted in part and denied in**

9          **part**.  The Clerk of Court shall file in the public record the unredacted version of

10         SiteLock's motion to compel (Doc. 257) and all of the attachments thereto (Doc.

11         257-1), except that the Clerk shall file under seal Exhibits 7 and 13 of SiteLock's

12         motion to compel (Doc. 257-1 at 98-99; *id.* at 127-29).[10]

13    (5)   GoDaddy's third motion to seal (Doc. 270) is **denied**.  The Clerk of Court shall

14         file the unredacted response (Doc. 272) and the unredacted exhibits thereto (Doc.

15         272-1, -2, -3) in the public record.

16    (6)   GoDaddy's fourth motion to seal (Doc. 274) is **denied**.  The Clerk of Court shall

17         file Exhibits 10-12 (Doc. 259-1, -2, -3) in the public record.

18    (7)   GoDaddy's fifth motion to seal (Doc. 284) is **denied**.  The Clerk of Court shall

19         file the unredacted reply (Doc. 281) in the public record.

20         Dated this 21st day of April, 2021.

21

22

23    _____

24    Dominic W. Lanza
      United States District Judge

25

26

27    _____

      [10]    This order may present logistical difficulties for the Clerk of Court, due to the
28    parties' failure to follow the direction that separate exhibits not be lumped together as one
      attachment.  If the Clerk of Court is unable to accomplish this, the Court will issue a follow-
      up order requiring the parties to do it.